KING, Circuit Judge:
The district court granted summary judgment dismissing Willie E. Love’s lawsuit against Tyson Foods, Inc. It held that Love was judicially estopped from bringing his claims against Tyson because he had failed to disclose them in his Chapter 13 bankruptcy proceeding. We AFFIRM.
I. FACTUAL AND PROCEDURAL BACKGROUND
Tyson Foods, Inc. (“Tyson”) hired Willie E. Love (“Love”) as a truck driver on July 23, 2007, but fired Love three days into his orientation after he disclosed that he had tested positive for drug use in 2001. Tyson cited safety concerns as the reason for dismissing Love. However, Love asserted that, because Tyson’s employment application only required applicants to disclose positive drug tests within three years of applying for employment, Tyson had discriminated against him on the basis of his race by terminating him for drug use that occurred prior to the time frame listed in his employment application. Tyson subsequently rehired Love but required him to take monthly drug tests. Tyson terminated Love again on April 2, 2008, when Love tested positive for drug use. Love contended that an antibiotic he was taking caused a false positive result on the drug test, but Tyson declined to consider the results of any subsequent testing.
On May 30, 2008, Love filed a charge of discrimination with the Equal Employment Opportunity Commission (“EEOC”), asserting that Tyson subjected him to racial discrimination and that his second termination was in retaliation for his prior complaints of racial discrimination related to his first termination. The EEOC issued a notice of right to sue on December 16, 2008, and Love filed the present action on March 12, 2009. He asserted federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and under 42 U.S.C. § 1981, as well as a state-law claim for intentional infliction of emotional distress.
At the time Love filed both his EEOC charge and his complaint initiating the instant case, Love was a debtor in a Chapter 13 proceeding, having filed a peti *261 tion for bankruptcy on May 1, 2008. “[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims.” Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 207-08 (5th Cir.1999) (emphasis omitted) (citing 11 U.S.C. § 521(1)). “The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one.” Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir.2005) (citation omitted). The disclosure requirement pertains to potential causes of action as well. See In re Coastal Plains, Inc., 179 F.3d at 208. Nonetheless, Love did not disclose his claims against Tyson and affirmatively stated “NONE” on Schedule B, item 21, which required the identification of “[o]ther contingent and unliquidated claims of every nature.” On September 22, 2008, the bankruptcy court confirmed Love’s Chapter 13 plan, which did not mention the then-pending EEOC matter and provided that Love’s unsecured creditors would receive no payment.
On July 16, 2009, Tyson moved for summary judgment, arguing that Love should be judicially estopped from pursuing his claims against Tyson because he failed to disclose those claims to the bankruptcy court. On July 22, 2009, Love filed an amended schedule in his bankruptcy case listing his claims against Tyson. On January 7, 2010, the district court granted Tyson’s motion for summary judgment and dismissed Love’s case. Love timely appealed.[1]
II. DISCUSSION

A. The Doctrine of Judicial Estoppel

The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding. See Reed v. City of Arlington, 650 F.3d 571, 573-74 (5th Cir.2011) (en banc). The aim of the doctrine is to “protect the integrity of the judicial process.” New Hampshire v. Maine, 532 U.S. 742, 749-50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citation and internal quotation marks omitted). “Because the doctrine [of judicial estoppel] is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary.” In re Coastal Plains, Inc., 179 F.3d at 205 (citation omitted). Moreover, “ ‘the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.’ ” Id. at 208 (emphasis omitted) (quoting Rosenshein v. Kleban, 918 F.Supp. 98, 104 (S.D.N.Y.1996)).
In determining whether to apply judicial estoppel, we primarily look for the presence of the following criteria: “(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently.” Reed, 650 F.3d at 574 (citations omitted). However, judicial estoppel is not governed by “inflexible prerequisites or an exhaustive formula for determining [its] applicability,” and numerous considerations “may inform the doctrine’s application in specific factual contexts.” New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808. This court has noted that “[jjudicial estoppel is particularly appropriate where ... a party fails to *262 disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset.” Jetkroe, 412 F.3d at 600.

B. Standard of Review

“We review a judicial estoppel determination for abuse of discretion.” Id. at 599-600; see also Kane v. Nat’l Union Fire Ins. Co., 535 F.3d 380, 384 (5th Cir.2008) (explaining that a district court’s application of judicial estoppel is reviewed for abuse of discretion, even when the district court granted summary judgment on that basis). “[D]eference ... is the hallmark of abuse-of-discretion review.” Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Nonetheless, “[a] district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts.” McClure v. Ashcroft, 335 F.3d 404, 408 (5th Cir.2003). Whether a debtor’s failure to disclose claims was inadvertent presents a question of fact. See Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir.2010); cf. Cont’l Cas. Co. v. McAllen Indep. Sch. Dist., 850 F.2d 1044, 1046 (5th Cir.1988). As discussed above, the district court granted summary judgment in Tyson’s favor, finding that Love had made no effort to demonstrate inadvertence. Reversal of this finding is proper if we find that there is a genuine factual dispute regarding whether Love failed to disclose his claims inadvertently. See Fed. R. Civ. P. 56(a) (“The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.”); Buffalo Marine Servs. Inc. v. United States, 663 F.3d 750, 753 (5th Cir.2011) (‘We review a grant of summary judgment de novo, applying the same standard as the district court.”).

C. There is No Fact Issue Regarding Love’s Inadvertence

Love’s sole argument on appeal is that his failure to disclose his claims was inadvertent. “[I]n considering judicial es-toppel for bankruptcy cases, the debtor’s failure to satisfy its statutory disclosure duty is ‘inadvertent’ only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.” In re Coastal Plains, Inc., 179 F.3d at 210 (emphases omitted). Love concedes that he knew about the undisclosed claims against Tyson, but he argues that he had no motive to conceal his claims.
In its motion for summary judgment, Tyson set forth a motivation for Love to keep his claims concealed — the prospect that Love could keep any recovery for himself. As one court has stated, “the motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.” Thompson v. Sanderson Farms, Inc., No. 3:04CV837-WHB-JCS, 2006 U.S. Dist. LEXIS 48409, at *12-13 (S.D.Miss. May 31, 2006) (citation omitted). Similarly, this court has found that debtors had a motivation to conceal where they stood to “reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors.” Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.), 374 F.3d 330, 336 (5th Cir.2004). After Tyson set out this motivation to conceal, it fell to Love to show that the omission of his claims from his schedule of assets was inadvertent. See Jethroe, 412 F.3d at 600-01.
*263 In response to Tyson’s motion for summary judgment, Love failed to set forth any argument or otherwise create a fact issue regarding whether he acted inadvertently. Love’s five-page brief discussed only two of the three criteria that are central to this court’s judicial estoppel analysis and conspicuously omitted any discussion of inadvertence. The response even failed to mention the words “inadvertent,” “motive,” or “intent,” or to suggest that inadvertence had any bearing on the court’s determination of whether judicial estoppel should apply. Love instead contended that: (1) “Plaintiffs positions are no longer inconsistent as [Love] supplemented his Schedule to list the current case as an asset in his bankruptcy”; (2) “the Defendant has failed to show the bankruptcy court has accepted the Plaintiffs prior position that he had no contingent claims”; (3) “Plaintiff will not derive any unfair advantage or impose any unfair detriment on any opposing party if not estopped”; and (4) “Plaintiffs bankruptcy is still pending and any monies paid by Defendant through settlement or judgment in this case would go into the bankruptcy to pay Plaintiffs creditors first.”
Critically, Love’s arguments before the district court did nothing to refute Tyson’s allegations or explain why Love did not disclose his claims when his disclosure obligations first arose. His first two arguments clearly do not speak to his motive to conceal his claims against Tyson. With respect to Love’s third argument, whether Tyson or Love would accrue an unfair detriment or benefit if the lawsuit were allowed to go forward after Tyson forced Love to disclose his claims is an entirely different issue than whether Love had a financial motive to conceal his claims against Tyson at the time Love failed to meet his disclosure obligations, which is the relevant time frame for the judicial estoppel analysis. See In re Superior Crewboats, Inc., 374 F.3d at 336; Robinson, 595 F.3d at 1276 (“When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure.” (citing Casanova v. Pre Solutions, Inc., 228 Fed.Appx. 837, 841 (11th Cir.2007))). Regarding Love’s fourth argument, Love did state that he would pay his creditors before collecting any money from his claims against Tyson, but he made this assertion only after Tyson brought his nondisclosure to light. Love’s disclosure obligations arose long beforehand, and his statement about his post-disclosure conduct again fails to speak to his motivations while he was obligated to disclose his claims but had not yet done so. Consequently, we agree with the district court’s conclusion that Love ultimately provided “no basis for concluding that [the] failure to disclose th[e] litigation [against Tyson] to the bankruptcy court was ‘inadvertent.’ ” Thus, the district court did not abuse its discretion by applying judicial estoppel to Love’s claims.

D. The Dissent

The dissent would hold that the district court should not have estopped Love from asserting his claims because Tyson failed to carry its burden to establish that judicial estoppel should apply. According to the dissent, Tyson’s assertion that Love stood to gain personally by concealing his claims was incorrect as a matter of law, and thus Love could not have been motivated by a desire to conceal his claims. As a consequence, the dissent contends that the summary judgment burden never shifted to Love to explain his nondisclosure.[2] The dissent further asserts that, *264 even if the burden was properly shifted to Love, his arguments before the district court were sufficient to create a fact issue regarding inadvertence, making summary judgment improper.
There are several key problems with the dissent’s analysis. Despite precedent calling for consideration of a debtor’s inadvertence or lack thereof, the dissent essentially eliminates consideration of a debtor’s motives from the calculus. See Reed, 650 F.3d at 574. The dissent concludes that, because Love’s claims against Tyson were the property of his bankruptcy estate and Love was obligated to pursue these claims on his creditors’ behalf, Love was necessarily acting for the benefit of his creditors from the inception of his lawsuit against Tyson and thus had no motive to conceal his claims. However, the dissent fails to acknowledge that Love did have a strong incentive to keep his claims concealed. If Tyson had not brought Love’s claims to light, Love could have kept any recovery for himself, even though the claims belonged to the bankruptcy estate. Thus, the dissent’s assumption that Love was discharging his duties under the law supplants the inadvertence analysis and automatically attributes good motives to Love despite very real incentives for Love to conceal his claims and Love’s utter failure to explain why he failed to meet his disclosure obligations.
Moreover, even after Love disclosed his claims, it is unclear whether his creditors would ultimately share in any recovery. Although Love amended his schedule of assets to list his claims against Tyson, his plan was not amended to provide that his creditors would be paid out of any recovery. Thus, there is nothing of record that presently requires Love to pay his creditors. Consequently, if Love were to recover any money from Tyson after his discharge (currently scheduled for late 2013) without any amendment to his plan, the recovery would go to Love to the exclusion of his creditors. See 11 U.S.C. §§ 554(c), 1329. In fact, Love’s failure to disclose his claims when he was required to do so has caused considerable delay, increasing the likelihood that his lawsuit against Tyson would continue past the date his discharge is scheduled to occur. The possibility that Love’s creditors might not benefit from any recovery again demonstrates that the dissent is incorrect to assume that Love would be acting in the interest of his creditors if allowed to continue pursuing his claims against Tyson.
Further, the dissent curiously limits its examination of Love’s motivations to conceal his claims to those that existed after Tyson had forced disclosure. This examination, however, assesses Love’s motives from the wrong point in time and completely overlooks the relevant inquiry, which analyzes Love’s motives as he was potentially concealing his claims (i.e., failing to disclose his claims despite a legal obligation to list them in his schedule of assets). See In re Superior Crewboats, Inc., 374 F.3d at 336; Robinson, 595 F.3d at 1276. The proper analysis would give heed to the potential windfall Love could have reaped if his claims had remained undisclosed. Moreover, the key advantage of concealment — the debtor’s ability to collect any recovery on claims without his creditors’ knowledge — vail be removed in *265 every instance that the debtor is forced to disclose his claims. Thus, the dissent’s analysis again improperly excludes all consideration of the debtor’s relevant motivations.
The dissent further contends that Love created a fact issue regarding inadvertence by asserting that he would “not derive any unfair advantage or impose any unfair detriment on any opposing party if not es-topped.” The dissent’s analysis, however, improperly conflates the issues of whether a debtor acted inadvertently when concealing his claims and whether a party would enjoy an unfair advantage or suffer an unfair detriment if judicial estoppel were not applied. The dissent cites New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), and Hall v. GE Plastic Pacific PTE Ltd., 327 F.3d 391 (5th Cir.2003), for the proposition that the inadvertence analysis turns on the advantages or disadvantages judicial es-toppel would cause the litigants. However, these are distinct issues, and the New Hampshire and Hall courts treat them as such. See New Hampshire, 532 U.S. at 751, 753-54, 121 S.Ct. 1808; Hall, 327 F.3d at 399-400. Thus, Love’s assertion that he would not gain an unfair advantage if not estopped does not speak to the issue of inadvertence and, as a consequence, does not create a fact issue regarding Love’s motive to conceal.
What appears to drive the dissent is a desire to change the law in a way that would prevent nearly every application of judicial estoppel in the bankruptcy context. Time and time again, however, judicial es-toppel has been applied by this court and others far more broadly than the dissent’s reasoning would allow. See, e.g., In re Superior Crewboats, Inc., 374 F.3d 330; In re Coastal Plains, Inc., 179 F.3d 197; Kamont v. West, 83 Fed.Appx. 1 (5th Cir.2003). Although the dissent attempts to distinguish our precedent applying judicial estoppel in the bankruptcy context, the distinctions do not hold up when the dissent’s rationale is followed to its logical end. Under the dissent’s analysis, if it is theoretically possible that a non-disclosing debtor is pursuing claims for the benefit of his creditors (because the claims are property of the estate), then a court must assume that the debtor is, in fact, acting on his creditors’ behalf and that any nondisclosure of those claims was inadvertent. However, under this rationale, a dishonest debtor could, in almost every case, conceal his claims from his creditors and assert them without his creditors’ knowledge unless an opponent forced disclosure. Upon being forced to disclose his claims, a debt- or could then amend his schedules to include the claims, as Love did here, or take other corrective action, and his nondisclosure would be considered inadvertent.[3] However, this court has observed that “ ‘[allowing [the debtor] to back-up, reopen the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught *266 concealing them.’ ” In re Superior Crewboats, Inc., 374 F.3d at 336 (second alteration in original) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir.2002)); see also Thompson, 2006 U.S. Dist. LEXIS 48409, at *23 (stating that “[a] plaintifiydebtor should not be allowed to amend a bankruptcy petition only after his omission has been challenged by an adversary”) (citation and internal quotation marks omitted). We decline to invite such abuses here.
Despite the dissent’s assertions to the contrary, our decisions in Reed and Kane do not require us to reach a different result. Most glaringly, the equities in Reed were very different than those in the instant case. In Reed, the debtor was prevented from realizing any gains at all on claims he had not timely disclosed to his creditors. 650 F.3d at 573. Thus, unlike the instant case where Love could potentially share in the gains from his lawsuit, only the creditors stood to benefit in Reed.[4] Moreover, the claims at issue in both Reed and Kane were ultimately pursued by innocent Chapter 7 trustees, and not by the debtors themselves. See id. at 574-75; Kane, 535 F.3d at 383-84. According to the dissent, throughout his lawsuit against Tyson, Love was in an “analogous position to a trustee” because he “stood in a fiduciary capacity to act on behalf of the estate the moment he filed for bankruptcy.” However, although it is true that Love, like a trustee, did owe fiduciary duties to his creditors, he is still also a debtor — one who did not meet his disclosure obligations and subsequently failed to provide any basis for the district court to conclude that his nondisclosure was inadvertent. In this situation, we decline to consider Love to be an innocent trustee. Further, if, as the dissent suggests, a debtor who is caught concealing his claims by an opponent could then disclose his claims and automatically be deemed an innocent trustee, there would be virtually no incentive for a debtor to disclose his claims until forced to do so by an opponent.
Finally, the dissent correctly notes that the effect of judicial estoppel on creditors is a consideration that could discourage courts from applying the doctrine. See Reed, 650 F.3d at 576; Kane, 535 F.3d at 387-88. We do not mean to diminish the weight that courts should give to creditors’ interests when determining whether judicial estoppel should apply. We merely hold that the district court did not abuse its discretion in applying judicial estoppel to Love’s claims after finding that Love failed to create a fact issue regarding his purported inadvertence.
III. CONCLUSION
For the reasons stated above, we AFFIRM the judgment of the district court. Costs shall be borne by Love.

. The record reflects that Love was represented by counsel in the proceedings before the district court and by different counsel in his Chapter 13 bankruptcy case. Love proceeds pro se on appeal.

. As we discuss below, Love could have enjoyed personal gains from concealing his claims had they remained undisclosed. Thus, Tyson did set out a valid motivation for Love *264 to keep his claims concealed. This motivation and the fact that Love did not timely disclose his claims caused the burden to shift to Love to provide some explanation for his failure to meet his disclosure obligations. See Bayle v. Allstate Ins. Co., 615 F.3d 350, 355 (5th Cir.2010) ("Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial.”).

. There are several ways a dishonest debtor could "cure” his nondisclosure and be considered blameless under the dissent's rationale. For instance, if a debtor had been granted a discharge, he could, in most cases, reopen his bankruptcy case under 11 U.S.C. § 350(b) and then continue to assert his claims in the interest of his creditors. Also, in the case of a concealed claim that no longer belonged to the estate because it had been abandoned by the trustee, the abandonment could be revoked, and the debtor could then pursue the claim on behalf of the estate. See Killebrew v. Brewer (In re Killebrew), 888 F.2d 1516, 1521 n. 10 (5th Cir.1989). Only in rare situations, such as the one in Jethroe where the debtor could not have reopened her bankruptcy case, could a debtor be found to have a motive to conceal under the dissent’s reasoning. See 412 F.3d at 599.

. The dissent suggests that the district court should have fashioned a remedy that would only punish the debtor, as the district court had done in Reed. First, no such argument was made to the district court or to this court. Second, in Reed, the debtor had already won a judgment when his nondisclosure was brought to light. 650 F.3d at 572-73. Here, by contrast, Love is a Title VII plaintiff whose claims against Tyson are likely far from judgment, and the success of those claims would almost certainly require his participation. A district court ruling on a judicial estoppel defense could conclude that prohibiting Love from sharing in any recovery would remove most, if not all, of his incentives to participate in the lawsuit and could prove fatal to his claims.