**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 22, 2013

No. 13-30073

Lyle W. Cayce
Clerk

In the Matter of:
CHERYL ANN FLUGENCE,

Debtor.

CHERYL ANN FLUGENCE; KEITH A. RODRIGUEZ,

Appellees,

versus

AXIS SURPLUS INSURANCE COMPANY;
GREAT WEST CASUALTY COMPANY;
A & R TRANSPORT, INCORPORATED; KENT SERRET,

Appellants.

* * * * * * * * * * * * * *

In the Matter of:
CHERYL ANN FLUGENCE,

Debtor.

AXIS SURPLUS INSURANCE COMPANY;
GREAT WEST CASUALTY COMPANY;
A & R TRANSPORT, INCORPORATED; KENT SERRET,

Appellants,

versus

CHERYL ANN FLUGENCE; KEITH A. RODRIGUEZ,

Appellees.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

Before SMITH, DENNIS, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Cheryl Flugence filed for Chapter 13 bankruptcy protection in 2004, and a plan was confirmed. In March 2007, she was injured in a car accident, and she hired an attorney a month later. In July 2007, an amended Chapter 13 plan was confirmed. In March 2008 Flugence sued the appellants for personal injury from the accident. In November 2008, Flugence was discharged of all her remaining debts. She never disclosed to the bankruptcy court, between March 2007 and July 2007 (when the amended plan was confirmed), or between July 2007 and November 2008 (when her debts were discharged), that she had been in an accident and might prosecute a personal-injury claim.

Once the personal-injury defendants discovered this non-disclosure, they had the bankruptcy case reopened and sought to have Flugence judicially estopped from pursuing the undisclosed claim. The bankruptcy court declared that although Flugence was estopped from pursuing the claim on her own behalf, her bankruptcy trustee was not similarly estopped and could pursue the claim for the benefit of Flugence's creditors in accordance with *Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011) (en banc).

On appeal, the district court reversed with respect to estopping Flugence and affirmed in all other respects. The district court held that the bankruptcy court had abused its discretion by estopping Flugence because she "did not have a potential cause of action prior to her initial application for bankruptcy protection in 2005," and she relied on her attorney's advice "as to whether she must

2

No. 13-30073

disclose her potential cause of action to the bankruptcy court," and because of the flux in the law at the time regarding a debtor's duty to disclose in post-confirmation, Chapter 13 proceedings.

On appeal of the district court's judgment, the personal-injury defendants contend that, with respect to Flugence, the bankruptcy court did not abuse its discretion in declaring her estopped, so the bankruptcy court's judgment should be reinstated in that regard. With respect to the trustee, the personal-injury defendants maintain that both the bankruptcy and district courts erred in holding that *Reed* allows a trustee to pursue an estopped debtor's claim without limits on the extent of possible recovery. Specifically, they argue that their exposure to liability should be limited to the amount of Flugence's outstanding debt to creditors, about $44,000.

We agree with the personal-injury defendants that there is a continuing duty to disclose in a Chapter 13 proceeding and that Flugence has met all the elements of judicial estoppel. Therefore, the bankruptcy court did not abuse its discretion by finding her estopped. We disagree with the personal-injury defendants' reading of *Reed*, however, because nothing there requires that recovery be limited strictly to the amount owed creditors. We therefore reverse the portion of the district court's judgment that reversed the judgment of the bankruptcy court, and we render judgment reinstating the bankruptcy court's judgment in full.

I.

"Although we are the second court to review the bankruptcy court's judicial estoppel ruling, we review it as if this were an appeal from a trial in the district court. Because judicial estoppel is an equitable doctrine, and the decision whether to invoke it within the court's discretion, we review for abuse of discretion." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 204–05

No. 13-30073

(5th Cir. 1999) (internal quotation marks and citations omitted).

> An abuse of discretion standard does not mean a mistake of law is beyond appellate correction, because a district court by definition abuses its discretion when it makes an error of law. Accordingly, the abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.

*Id.* at 205 (internal quotation marks and citations omitted).

## II.

Judicial estoppel has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. *Reed*, 650 F.3d at 574. The bankruptcy court found all three elements here, and we cannot say it abused its discretion.

Flugence's main arguments to avoid estoppel are (1) that her cause of action accrued after the initial confirmation; (2) that her non-disclosure was inadvertent because she did not know she had to disclose; and (3) that it was unclear whether she had to disclose because of a conflict in two Bankruptcy Code provisions that have troubled the courts, including the Fifth Circuit. Each of these arguments attacks the third prong of the judicial estoppel test—whether Flugence acted inadvertently because she did not know she had a duty to disclose. Each also challenges the first prong by implication—if she did not have a duty to disclose, then her failure to disclose was not a representation that she had no claim, so she did not assert an inconsistent legal position.

The bankruptcy court, however, rightly found the law on disclosure well settled: Chapter 13 debtors have a continuing obligation to disclose post-petition

4

No. 13-30073

causes of action.[1]

It may be uncertain whether a debtor must disclose assets post-*confirmation*. That uncertainty arises from two provisions in the Bankruptcy Code, one suggesting that post-confirmation causes of action are "property of the estate" and the other hinting that such property is "vested" "in the debtor."[2] That possible conflict, however, is irrelevant here. The latter provision vests property in the debtor *unless otherwise specified by the confirmation plan*—and here, the plan explicitly stated that the estate's assets would not revest in the debtor until discharge.[3]

At oral argument, Flugence's attorney stated that there is still ambiguity, because the order says property of the estate shall revest after discharge, but it

---

[1] *See, e.g.*, *Browning*, 179 F.3d at 207–08 ("It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." (internal quotation marks, emphasis, and citations omitted)). The continuing duty to disclose is a longstanding gloss required by our caselaw. *See id.*; *Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004) ("The duty to disclose is continuous."); *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) ("The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one."); *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 384–85 (5th Cir. 2008) ("Pursuant to the Bankruptcy Code, debtors are under a continuing duty to disclose all pending and potential claims."); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) ("'The obligation to disclose pending and unliquidated claims in bankruptcy proceedings is an ongoing one.'" (quoting *Jethroe*, 412 F.3d at 600)).

[2] Under 11 U.S.C. § 1306(a)(1), "Property of the estate includes, in addition to the property [that typically becomes property of the estate,] all property of [that] kind . . . that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." Second, under 11 U.S.C. § 1327(b), "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Therefore, although a cause of action acquired post-confirmation and pre-closure, -dismissal, or -conversion would seem, on the one hand, to be "property of the estate" under § 1306(a)(1), it would also appear, on the other hand, to have "vest[ed] . . . in the debtor" under § 1327(b).

[3] The bankruptcy court's order confirming Flugence's plan provided explicitly that "[n]o property of the estate will revest in the debtor(s) until such time as the debtor(s) receive a discharge or the case is dismissed."

is unclear whether the cause of action ever was property of the estate. Even so, our decisions have settled that debtors have a duty to disclose to the bankruptcy court notwithstanding uncertainty. The reason for the rule is obvious: Whether a particular asset should be available to satisfy creditors is often a contested issue, and the debtor's duty to disclose assets—even where he has a colorable theory for why those assets should be shielded from creditors—allows that issue to be decided as part of the orderly bankruptcy process.[4]

Because Flugence had an affirmative duty to disclose her personal-injury claim to the bankruptcy court and did not do so, she impliedly represented that she had no such claim.[5] That is plainly inconsistent with her later assertion of the claim in state court. Moreover, the bankruptcy court accepted the prior position by omitting any reference to the personal-injury claim in the modified plan. Had the court been aware of the claim, it may well have altered the plan. Therefore, the first two elements of judicial estoppel apply.

The remaining question is whether Flugence acted inadvertently. Her representation that she did not know she had to disclose—and that she relied on the advice of her attorney—is unavailing on this prong of the test as well. To establish inadvertence as that term is understood in the judicial-estoppel jurisprudence, Flugence "may prove either that she did not know of the inconsistent position or that she had no motive to conceal it from the court." *Jethroe*, 412

---

[4] *See United States v. Beard*, 913 F.2d 193, 197 (5th Cir. 1990) (explaining that debtors have a "duty to disclose to the court the existence of assets whose immediate status in the bankruptcy is uncertain, even if that asset is ultimately determined to be outside of the bankruptcy estate"); *see also In re Robinson*, 292 B.R. 599, 607 (Bankr. S.D. Ohio 2003) ("[D]ebtors have the absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate. This is because the bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate." (internal quotation marks and citations omitted)).

[5] *See Superior Crewboats*, 374 F.3d at 335 ("[T]he [debtors'] omission of the personal injury claim from their mandatory bankruptcy filings is tantamount to a representation that no such claim existed.").

No. 13-30073

F.3d at 601. To prove that she "did not know of the inconsistent position," she "must show not that she was unaware that she had a duty to disclose her claims but that . . . she was unaware of the facts giving rise to them." *Id.* In other words, "the controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions . . . . [A] lack of awareness of a statutory disclosure duty for [] legal claims is not relevant." *Id.* at 601 n.4 (internal quotation marks and citation omitted).

Flugence knew of the facts underlying her personal-injury claim. The bankruptcy court also found that she had motive to conceal, because her claim, if disclosed, would be available to the creditors. That she did not know that bankruptcy law required disclosure—even if true—is, according to our precedents, irrelevant.

## III.

The personal-injury defendants contend that the bankruptcy court erred in interpreting *Reed* to allow the trustee to pursue Flugence's personal-injury claim without limitation. Specifically, the defendants contend that they are entitled to a declaration that, although the trustee may pursue the claim against them, their exposure is limited to the amount of Flugence's debt to her creditors. This is a legal issue this court considers *de novo*. *Traina v. Whitney Nat'l Bank*, 109 F.3d 244, 246 (5th Cir. 1997).

## IV.

*Reed*, 650 F.3d at 573, holds generally that, where a debtor is individually estopped from pursuing an undisclosed claim, "absent unusual circumstances, an innocent trustee can pursue [the claim] for the benefit of creditors." The remedy affirmed in *Reed* provided that, though the debtor was personally estopped, the trustee "would be free to [pursue the claim for recovery] for distri-

bution to [the debtor's] creditors," and "[a]ny remaining funds after distribution would be refunded to the [defendants], and not to [the debtor]." *Id.* That holding was intended both to "deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system," and to "protect[] the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Id.* at 574. Nothing in *Reed* speaks to liability limitations of the sort the personal-injury defendants seek, and for good reason.

The basic thrust of the defendants' argument is that it would be inconsistent with the goals of bankruptcy to allow the trustee to pursue a claim where, as here, it would disproportionately benefit the attorneys over the creditors. Although the argument may be superficially appealing, if the personal-injury defendants were entitled to the sort of limitation they seek, then such declarations would tend to "thwart one of the core goals of the bankruptcy system— obtaining a maximum and equitable distribution for creditors." *Id.* at 577. Attorneys might not be willing to take on the case with a dim hope for recovery, so the creditors would collect nothing.

The Bankruptcy Code adequately addresses limitations on attorneys' fees. Lawyers and other professionals may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis," and the court must approve such compensation as reasonable. 11 U.S.C. §§ 328, 330. Because the trustee is a fiduciary of the estate, he has a duty to ensure that the compensation arrangements made with attorneys and others are in the best interests of the creditors.[6] In short, bankruptcy law already imposes limitations on professional compensation.

In *Reed*, we rejected the notion that innocent creditors should be punished

---

[6] *See generally United Pac. Ins. Co. v. McClelland (In re Troy Dodson Constr. Co.)*, 993 F.2d 1211, 1216 (5th Cir. 1993) ("The trustee owes a fiduciary duty to *all* the creditors.").

No. 13-30073

for the debtor's failure to comply with disclosure rules. "Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application." *Reed*, 630 F.3d at 576 (emphasis and citation omitted). That wrongful tortfeasors would be favored over innocent creditors by the mere happenstance of the debtor's independent non-disclosure turns equity on its head. Providing the personal-injury defendants the windfall they seek is neither necessary nor desirable.[1]

Accordingly, where a debtor is judicially estopped from pursuing a claim he failed to disclose to the bankruptcy court, the trustee, consistent with *Reed*, may pursue the claim without any limitation not otherwise imposed by law. The judgment of the district court is REVERSED, and judgment is RENDERED reinstating the judgment of the bankruptcy court.

\* \* \* \* \* \* \* \* \* \*

JAMES L. DENNIS, Circuit Judge, concurring:

I concur in the court's opinion and judgment, but I write separately to briefly state my understanding of one point. That is, that "judicial estoppel is not governed by inflexible prerequisites or an exhaustive formula for determining its applicability, and numerous considerations may inform the doctrine's application in specific factual contexts." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (internal quotation marks omitted); *see also Reed v. City of*

---

[1] The defendants' only other argument is that in *Reed* we permitted the attorney to recover costs because he was a creditor of the estate. But the cited passage refers only to fees accrued before the conclusion of the FMLA suit in that case; the court also permitted fees for work performed after the FMLA judgment. *See Reed*, 650 F.3d at 576, 579.

No. 13-30073

*Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) ("Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to achieve substantial justice." (quoting 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.31, at 73 (3d ed. 2011))). Depending on the specific facts of the case, whether judicial estoppel is invoked and, if so, what is the remedy crafted may differ. *See, e.g., Gilbreath v. Averitt Exp., Inc.*, No. 09-1922, 2010 WL 4554090 (W.D. La. Nov. 3, 2010). The bankruptcy court, which is closest to the facts, operates in a zone of discretion in crafting an appropriate remedy. *Cf. In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) ("[J]udicial estoppel is an equitable doctrine, and the decision whether to invoke it within the court's discretion . . . ."). That we affirmed the bankruptcy court's remedy here – estopping Flugence from pursuing her personal-injury claim while allowing the bankruptcy trustee to do so and requiring that any recovery by the trustee exceeding Flugence's remaining debt be refunded to the tortfeasors – does not imply that the same must be done in *all* cases in which a debtor fails to disclose a claim to the bankruptcy court. As our opinion does not require the same remedy in all cases, I concur.