

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00148-CV

BRIAN K. HAREN AND SUSAN K.                                APPELLANTS
HAREN F/K/A SUSAN C. CARLEY

V.

WELLS FARGO BANK, N.A.                                     APPELLEE

----------

## FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 352-257742-12

----------

## MEMORANDUM OPINION[1]

----------

In six issues, appellants Brian K. Haren and Susan K. Haren f/k/a Susan C. Carley appeal the trial court's order granting the motion for summary judgment filed by appellee Wells Fargo Bank, N.A. We conclude that appellants are judicially estopped from maintaining any of their claims in this lawsuit against

---

[1]*See* Tex. R. App. P. 47.4.

appellee; therefore, we overrule appellants' dispositive first issue, and we affirm the trial court's take-nothing judgment.

## Background Facts

In 2003, appellants signed a note to repay $155,932 for the financing of real property.[2] The note required appellants to make monthly payments and allowed the lender to accelerate the full amount due if appellants did not do so. Appellants also executed a deed of trust, naming Cross Point Funding, Inc. as the beneficiary. Cross Point Funding, Inc. assigned its interest in the loan to Wells Fargo Home Mortgage, Inc. In 2004, Wells Fargo Home Mortgage, Inc. merged into Wells Fargo Bank, N.A.

In 2005, Susan lost her job, and soon thereafter, appellants defaulted on some monthly payments. The parties appear to agree that from 2005 through 2011, they repeatedly communicated about appellants' default and how it might be cured. For example, in 2005 and 2006, the parties entered temporary forbearance agreements that altered appellants' regular payments under the note. But the parties never reached a final solution that cured appellants' default. Appellants claim that appellee, "through various agents and representatives, . . . made numerous demands and representations concerning [appellants'] mortgage which [were] false, inaccurate, and were made recklessly, and with total disregard for the truth or validity thereof." Appellants contend that appellee

---

[2]Appellants bought the property in 2002 and refinanced it in 2003.

2

failed to timely deliver or honor the forbearance agreements, that certain hardships hampered their ability to make timely payments, and that appellee otherwise acted improperly during negotiations aimed at curing the default.[3]

In February 2007, appellants filed a Chapter 13[4] bankruptcy petition in what they say was an attempt "to stop . . . foreclosure."[5] In a document filed with the bankruptcy court, appellants listed their home as an asset and named Wells Fargo Home Mortgage as a secured creditor. Appellee filed a document to assert itself as a creditor. Appellee also filed a motion with the bankruptcy court to allow foreclosure of the property.

In their sworn schedule of assets that they filed with the bankruptcy court, appellants included their home, cash on hand, money within bank accounts, a wrongful termination claim against Susan's former employer, workers' compensation benefits, and other property, but they did not disclose their claims against appellee. The schedule required appellants to list "contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." In May 2007, the bankruptcy court confirmed

---

[3]Because details of the parties' ongoing communications from 2005 until 2011 are not material to our disposition of this appeal, we omit most of them.

[4]*See* 11 U.S.C.A. §§ 1301–30 (West 2004 & Supp. 2014). Chapter 13 allows debtors to "reorganize with a repayment plan as an alternative to seeking a complete discharge of debts through the . . . liquidation process." *In re Meza*, 467 F.3d 874, 877 (5th Cir. 2006).

[5]Susan testified in a deposition that appellants filed for bankruptcy because of what appellee "ha[d] done to [them]."

appellants' chapter 13 plan and required them to make monthly payments to the bankruptcy trustee.

In 2009, through the agreement of appellants and appellee, the bankruptcy court entered an order that conditioned the automatic stay[6] resulting from the bankruptcy on appellants making regular monthly payments under the terms of the note and deed of trust. The agreed order recognized that appellants had "post-petition arrearages" on their loan. In December 2010, appellee sent a letter to appellants to inform them that they had failed to make required payments under the agreed order and that they had ten days to cure that default. Soon thereafter, according to appellants, they attempted to make payments, but appellee returned them.[7]

In January 2011, in the bankruptcy court, appellee filed a notice of termination of the automatic stay, asserting that appellants had failed to comply with the terms of the agreed order; appellants claim that this termination of the stay was improper. Later in 2011, appellee gave appellants notice of appellee's intent to accelerate the maturity date of the note and to schedule a foreclosure sale. In June 2011, appellee gave appellants an opportunity to cure their default

---

[6]See 11 U.S.C.A. § 362(a) (West Supp. 2014).

[7]The record includes a February 2011 letter from Wells Fargo's foreclosure department to appellants in which Wells Fargo stated that it was returning a check of $1,500 because it was not the "total amount due on [appellants'] account." The record also contains an April 2011 letter stating that Wells Fargo was returning payment of $2,978.86.

under the 2009 agreed order and represented that the foreclosure sale would be canceled if appellants did so. According to appellee, appellants did not cure the default.

In July 2011, appellee bought the property at a foreclosure sale. According to appellee, appellants asked that the sale be rescinded, that the deed of trust be reinstated, and that their loan be modified, but appellants never returned paperwork that would have accomplished those goals. Appellants claim that during this time, they "continued to write letters about Wells Fargo's conduct to Wells Fargo, but Wells Fargo failed to respond." In February 2012, appellee sued appellants. Appellee asked the trial court to void the 2011 foreclosure sale, declare that appellee had a valid lien against the property equal to the payoff of the note, and issue an order foreclosing upon the property and directing a sale of it. Appellants received a discharge from the bankruptcy court in March 2012.

Appellants initially answered appellee's claims only with a general denial. Later, they filed counterclaims against appellee. They alleged, in part, that appellee had breached a contract by violating terms of the note and deed of trust, that appellee was liable in tort for unreasonable collection efforts, that appellee had violated the Texas Debt Collection Practices Act,[8] and that title should be quieted in favor of appellants. As a remedy for these counterclaims, appellants sought, among other relief, damages, including compensation related to mental

---

[8]*See* Tex. Fin. Code Ann. §§ 392.001–.404 (West 2006 & Supp. 2014).

anguish and emotional distress, "direct and indirect economic damages," consequential damages, and exemplary damages. Although events that were the subject of the counterclaims occurred prior to appellants' discharge in bankruptcy, appellants never disclosed their counterclaims against appellee to the bankruptcy court.

Appellee filed a traditional and no-evidence motion for summary judgment concerning appellants' counterclaims. Appellee raised many arguments in its motion, including that judicial estoppel, based on appellants' failure to disclose their claims against appellee as assets during bankruptcy proceedings, precluded all of appellants' claims. Appellants responded to the motion for summary judgment by contending, in part, that judicial estoppel did not preclude their counterclaims because their failure to disclose the counterclaims as an asset in bankruptcy was inadvertent. While appellants conceded that the "major crux of [the facts supporting their counterclaims] occurred in the last few months of the bankruptcy," they argued that during the bankruptcy, they had "no way of knowing what those legal claims were or how much they would amount to."

The trial court granted appellee's motion for summary judgment and entered a take-nothing judgment on appellants' counterclaims. Appellee nonsuited its claims against appellants, and appellants brought this appeal.

**Judicial Estoppel**

In their first issue, appellants assert that the trial court improperly granted summary judgment because they are not judicially estopped from bringing their

6

counterclaims by failing to disclose them in the bankruptcy court. Based on the arguments presented, we disagree.[9]

Judicial estoppel is an affirmative defense upon which appellee had the burden of proof. *See Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 553 (Tex. 2002); *Stewart v. Hardie*, 978 S.W.2d 203, 208 (Tex. App.—Fort Worth 1998, pet. denied) (op. on reh'g). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

As we have explained,

> In a bankruptcy action, the debtor must disclose all assets including contingent or unliquidated claims.[10] The duty to disclose

---

[9]We cannot reverse a summary judgment on a basis that is not presented by the appellant on appeal. *See San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex. 1990).

[10]*See* 11 U.S.C.A. § 521(a)(1)(B)(i) (West Supp. 2014); *Garcia v. BNSF Ry. Co.*, 387 S.W.3d 763, 767 (Tex. App.—El Paso 2012, no pet.). We have

is a continuing duty that requires the debtor to amend schedules and forms if circumstances surrounding the bankruptcy change. If the debtor knows enough information to suggest that she might have a cause of action, then she must disclose the potential cause of action. The debtor must disclose any potential causes of action even if she does not know the legal basis of the claim.

. . . .

The doctrine of judicial estoppel applies when a party attempts to assert a claim that is inconsistent with a claim asserted in a prior proceeding. The doctrine of judicial estoppel is designed to protect the integrity of the judicial process by preventing a party from "playing fast and loose" with the courts to suit the party's own purposes. The primary purpose of the doctrine is not to protect litigants but rather the integrity of the judiciary. It is usually applied when a party attempts to obtain an unfair advantage by intentionally asserting inconsistent claims in different courts.

To establish judicial estoppel involving a bankruptcy case, three elements must be proven: (1) the party to be estopped has taken a position clearly inconsistent with its previous position; (2) the previous court must have accepted the previous position; and (3) the previous inconsistent position was not inadvertent. A previous inconsistent position is only inadvertent when the debtor lacks knowledge of the inconsistent position or has no motive for the inconsistency.

*Horsley-Layman v. Adventist Health Sys./Sunbelt, Inc.*, 221 S.W.3d 802, 806–07

(Tex. App.—Fort Worth 2007, pet. denied) (footnote and citations omitted). In

*Horsley-Layman*, we held that by failing to disclose a medical malpractice suit as

---

stated that debtors "in a bankruptcy action have an absolute duty to report whatever interests they hold in property, even if they believe the asset is worthless or unavailable to the bankruptcy estate." *Stewart*, 978 S.W.2d at 208; *see also In re Flugence*, 738 F.3d 126, 129 (op. on reh'g) (5th Cir. 2013) (stating that it is "well settled" that "Chapter 13 debtors have a continuing obligation to disclose post-petition causes of action"); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (explaining that the "disclosure requirement pertains to potential causes of action").

an asset during a bankruptcy in which a plaintiff had received a discharge, the plaintiff could not maintain that claim in a separate suit. *Id.* at 807–08.

Consistent with our explanation and application of the judicial estoppel doctrine in *Horsley-Layman*, many Texas courts, including our own, have concluded that a position taken in a bankruptcy court, through disclosure or nondisclosure, precludes an inconsistent assertion of claims after the bankruptcy is final.[11] For example, last year, we decided a case in which, similar to the facts here, a homeowner had sued the beneficiary of a deed of trust for several claims related to foreclosure. *Flores v. Deutsche Bank Nat'l Trust Co.*, No. 02-12-00033-CV, 2014 WL 4109645, at *1 (Tex. App.—Fort Worth Aug. 21, 2014, no pet.) (mem. op.). Particularly, the homeowner had brought a claim in the trial court that the lien on his home was invalid under the Texas Constitution after successfully maintaining in the bankruptcy court that the property was secured by a valid lien. *Id.* at *1, *5. We noted that the "importance of [the] disclosure duty [during bankruptcy] cannot be overemphasized" and that "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Id.* at *5 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000)). We held that the homeowner had a financial motive to avoid disclosing the complaint about the lien during

---

[11]When a debtor fails to disclose an asset in a federal bankruptcy case, Texas courts apply federal judicial estoppel principles. *See Stewart*, 978 S.W.2d at 208 n.1; *see also In re Superior Crewboats, Inc.*, 374 F.3d 330, 334–35 (5th Cir. 2004) (discussing federal standards for judicial estoppel).

bankruptcy, and we concluded that judicial estoppel foreclosed his ability to complain about the lien after the bankruptcy was final. *Id.* at *6–9; *see also Cricket Commc'ns, Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, 303–09 (Tex. App.—Dallas 2007, no pet.) (holding that a company could not maintain claims after failing to disclose them while proceeding through bankruptcy); *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 381 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("Because the position urged by Brown in the bankruptcy court—that he had fewer tha[n] $50,000 in assets, including potential assets—is inconsistent with the position urged in his petition in this case, we conclude that Brown is estopped from claiming that he is entitled to a $79,700 bonus."); *Cleaver v. Cleaver*, 140 S.W.3d 771, 775 (Tex. App.—Tyler 2004, no pet.) ("[B]ecause he failed to list this lawsuit as a potential asset in bankruptcy[,] . . . Jimmy is judicially estopped from pursuing this claim.").

We must conclude that judicial estoppel precludes appellants' claims in this suit because appellants have taken a position clearly inconsistent with their position in the bankruptcy court, the bankruptcy court accepted that position, and the inconsistent position was not "inadvertent" as courts have defined that term. *See Horsley-Layman*, 221 S.W.3d at 807. The summary judgment evidence shows that appellants took inconsistent positions in the two cases and knew of the facts supporting their counterclaims during the bankruptcy litigation. *See id.* Susan testified in her deposition that when appellants had filed for bankruptcy, they believed that appellee had "failed to follow through with the forbearance

10

agreement" and had otherwise acted improperly.  She also testified that she had advised her bankruptcy attorney of the "issues" that she had with appellee.  The pleadings and summary judgment evidence (including Susan's deposition and affidavit) establish that all of appellants' complaints against appellee concern acts from 2005 through 2011 and that appellants did not receive their discharge in bankruptcy until March 2012.[12]  Although the bankruptcy records and Susan's deposition show that appellants disclosed to the bankruptcy court another contingent, unresolved legal claim for wrongful termination even though they did not know what the value of that claim was, they did not disclose any claim against appellee.  The bankruptcy court confirmed appellants' chapter 13 plan in 2007, later approved modifications to the plan on several occasions, and eventually discharged appellants' debts.[13]

These facts, showing that appellants knew of the circumstances during their bankruptcy that supported their later-filed claims against appellee, are

---

[12]On appeal, as in the trial court, appellants concede that the facts leading to their counterclaims occurred during the pendency of the bankruptcy case. Appellants state that the "crux" of their claims is that appellee "wrongfully terminated the automatic stay, failed to give [appellants] proper notice before foreclosing, and misrepresented the date of the foreclosure sale."  All of these alleged events occurred before the March 2012 discharge.

[13]Several courts have extended the duty to disclose claims to the bankruptcy court until the date of the debtor's discharge. *See, e.g.*, *D'Antignac v. Deere & Co.*, No. 14-10048, 2015 WL 1321570, at *2 (11th Cir. Mar. 25, 2015); *E.E.O.C. v. Rock-Tenn Servs.*, 901 F. Supp. 2d 810, 830 (N.D. Tex. 2012); *see also Superior Crewboats*, 374 F.3d at 335 (emphasizing that the bankruptcy court had adopted the debtor's position of non-disclosure when it issued a discharge).

11

sufficient to show that appellants should have disclosed the claims to the bankruptcy court. *See id.* ("If the debtor knows enough information to suggest that she might have a cause of action, then she must disclose the potential cause of action. The debtor must disclose any potential causes of action even if she does not know the legal basis of the claim." (citation omitted)); *see also Flugence*, 738 F.3d at 128 ("We agree . . . that there is a continuing duty to disclose in a Chapter 13 proceeding"); *Coastal Plains*, 179 F.3d at 208 (explaining that if the debtor has enough information to suggest that it may have a "possible cause of action," then the action must be disclosed). Appellants' nondisclosure of their claims to the bankruptcy court was tantamount to a representation that no such claims existed. *Superior Crewboats*, 374 F.3d at 335; *see Flugence*, 738 F.3d at 130 (stating that a failure to disclose a claim with the bankruptcy court was "plainly inconsistent with . . . later assertion of the claim in state court"); *Stewart*, 978 S.W.2d at 208 ("[Stewart] had a duty to report the potential lawsuit as an asset of the bankruptcy estate. The fact that he did not disclose it acted as a de facto denial that a . . . claim existed.").

Next, the bankruptcy court accepted appellants' position that they had no claims; appellants do not contend otherwise. *See Flores*, 2014 WL 4109645, at *6 ("When a debtor receives a discharge based on information he gave about his bankruptcy estate, the bankruptcy court is considered to have accepted the debtor's position for purposes of judicial estoppel."); *Norris v. Brookshire Grocery Co.*, 362 S.W.3d 226, 230 (Tex. App.—Dallas 2012, pet. denied) (explaining that

12

examples of a court accepting a debtor's claims "include cases where the debtor receives a discharge based on information he gives about his bankruptcy estate").

Consistent with our analysis above, appellants appear to concede that they failed to disclose the claims made in this lawsuit during their bankruptcy case, and they do not contest that the bankruptcy court accepted their position that included the nondisclosure of the claims. Principally, they contend that a fact issue exists concerning whether their failure to disclose was inadvertent; they contend that appellee did not conclusively prove that they had knowledge of the undisclosed claims and a motive for concealment.

As stated above, a "previous inconsistent position is only inadvertent when the debtor lacks knowledge of the inconsistent position or has no motive for the inconsistency." *Horsley-Layman*, 221 S.W.3d at 807; *see Flores*, 2014 WL 4109645, at *5; *see also Flugence*, 738 F.3d at 130 (explaining that the "controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions"). As explained above, the pleadings and summary judgment evidence establish beyond any genuine issue of material fact that appellants knew of the facts giving rise to their claims against appellee while their bankruptcy case was still pending.

Likewise, we conclude that the summary judgment evidence also conclusively establishes appellants' motive to proceed inconsistently in the two cases. As explained in *Love*, the "motivation sub-element is almost always met if

13

a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." 677 F.3d at 262; *see Flores*, 2014 WL 4109645, at *6; *Thomas v. Ginter*, No. 01-13-00143-CV, 2014 WL 3738054, at *3, *6 (Tex. App.—Houston [1st Dist.] July 29, 2014, no pet.) (mem. op.) (relying on the statement in *Love* about the debtor's self-evident motivation).

When pleading their counterclaims, appellants asked for a financial recovery that generally included "actual direct and indirect economic damages" and particularly included recovery for mental anguish and emotional distress that resulted in loss of income, damages for loss of credit reputation, consequential damages, and exemplary damages. Thus, appellants' claims were assets that, if disclosed, could have been available to creditors in the bankruptcy proceeding.[14] *See Flores*, 2014 WL 4109645, at *6 ("Flores did not disclose his constitutional claim regarding the lien's validity, and the potential financial benefit resulting from nondisclosure gave Flores a motive to not disclose it."); *see also Thomas*, 2014 WL 3738054, at *6 ("[T]he summary-judgment evidence showed that Thomas

---

[14]We note that debtors have a duty to disclose assets, such as unliquidated claims, to a bankruptcy court "notwithstanding uncertainty" about whether "a particular asset should be available to satisfy creditors." *Flugence*, 738 F.3d at 130. We also note that appellants' plea for these damages contradicts their appellate focus on the "title to their home" as the subject of their counterclaims. Appellants do not argue on appeal that any damages arising from their claims against appellee would not have been available to their bankruptcy creditors.

had motive to conceal the claims from the bankruptcy court because it diminished the pool of assets to be considered by the bankruptcy court.").

Appellants have not directed us to any evidence in the record that contradicts their "self-evident" financial motive as revealed by their bankruptcy filings in which they failed to disclose their claims against appellee. For example, neither Susan's affidavit nor her deposition addresses why appellants failed to disclose their claims to the bankruptcy court. *Cf. Love*, 677 F.3d at 263 ("Critically, Love's arguments before the district court did nothing to refute Tyson's allegations or explain why Love did not disclose his claims when his disclosure obligations first arose.");[15] *Cricket Commc'ns*, 235 S.W.3d at 307 (holding that the self-evident motive for failing to disclose a claim to the bankruptcy court coupled with no explanation for failing to disclose the claim "ascribe[d] a motive to conceal sufficient to preclude any claim of inadvertency"). Nor do appellants direct us to any other summary judgment evidence that supports their argument that a genuine issue of material fact exists as to whether they had motive to conceal their claims in the bankruptcy court.

For all of the reasons stated above, we conclude that the trial court did not err by granting summary judgment for appellee on all of appellants'

---

[15]Appellants' heavy reliance on the dissenting opinion in *Love* in their briefs before this court is unpersuasive. *See* 677 F.3d at 263–66 (addressing the arguments made within the dissenting opinion).

counterclaims on the basis that judicial estoppel precludes them.[16] *See* Tex. R. Civ. P. 166a(b)–(c); *Fernandez*, 315 S.W.3d at 508–09; *Horsley-Layman*, 221 S.W.3d at 807. We overrule appellants' dispositive first issue, and we decline to address appellants' second through sixth issues, in which they address other possible grounds upon which the trial court may have granted summary judgment. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *City of Blue Mound v. Sw. Water Co.*, 449 S.W.3d 678, 693 (Tex. App.—Fort Worth 2014, no pet.).

### Conclusion

Having overruled appellants' first issue and having concluded that the trial court did not err by granting summary judgment for appellee on appellants' counterclaims, we affirm the trial court's take-nothing judgment.

/s/ Dixon W. Holman

DIXON W. HOLMAN
SENIOR JUSTICE

PANEL: DAUPHINOT and MEIER, JJ; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DAUPHINOT, J., dissents without opinion.

DELIVERED: May 14, 2015

---

[16]Appellants argue generally that judicial estoppel does not preclude their counterclaims. They do not analyze judicial estoppel separately as to each counterclaim.

16