GARRETT, J.
Lin this personal injury lawsuit, the tortfeasor, Wanda Jean Harris, and several insurance companies appeal from a trial court ruling which denied their motion for summary judgment based on the affirmative defense of judicial estoppel, and granted partial summary judgment in favor of the plaintiff, Willie Lee Thomas. For the following reasons, we affirm.
FACTS
Thomas was a delivery driver for Farmers Seafood Company, Inc. On February 24, 2012, while making a delivery at the East Ridge Country Club, located in Shreveport, he was struck by a vehicle driven by Harris. Pinned between the rear of his delivery truck and the vehicle driven by Harris, Thomas suffered serious injuries. Hé has undergone multiple surgeries'and is unable to work. - ■
On September 6, 2012, he filed this personal injury suit against Harris; Economy Premier Assurance Company (“Economy”), her automobile insurer; and Metropolitan Property and Casualty Insurance Company (“Metropolitan”), her excess liability insurer. Later, Peerless Insurance Company (“Peerless”), 'the excess uninsured/underinsured' insurance carrier for Farmers Seafood, was added as a defendant.[1] Shortly after suit was filed, the attorney representing Harris and her insurers sent a letter to the plaintiffs attorney indicating that they would stipulate the accident was caused solely by the fault of Ms. Harris.
■ 12When the defendants deposed Thomas on March 28, 2014, they became aware that he had. previously filed a Chapter 18 bankruptcy proceeding before this accident occurred. Documents later filed into the record indicate that he had filed for Chapter 13 bankruptcy on November 23, 2010. The bankruptcy plan was confirmed on February 8, 2011. The bankruptcy filing shows'that Thomas had.no real property and very little personal property. His only secured creditor was the holder of the mortgage on hi's 1998 Mercury Grand Marquis automobile, which had more than 155,000 miles on it. Thomas had unsecured claims of approximately $11,000. He earned approximately $2,000 per month at his job with Farmers Seafood. His bankruptcy plan required him to pay approximately $200 per month to his creditors. When his personal vehicle was damaged, he amended his bankruptcy plan on February 28, 2011, and the proceeds of his property damage claim were used to pay *10 off his only secured creditor. The amended plan was confirmed on April 15, 2011. The accident at issue here occurred on February 24, 2012. Although he was seriously injured, he continued to comply with the bankruptcy plan. Thomas successfully completed the Chapter 13 plan and ultimately received a discharge from the bankruptcy court on February 17, 2014.
On June 27, 2014, Harris, Economy, and Metropolitan filed a supplemental answer asserting the affirmative defenses of failure to mitigate damages and judicial estop-pel. They then filed a motion for summary judgment, arguing that Thomas’s suit should be dismissed on the basis of | ¿judicial estoppel.[2] According to the defendants, Thomas was required to inform the bankruptcy court of the present personal injury claim and list it as an asset. Because he did not do so, the defendants asserted that Thomas was judicially es-topped from proceeding with his suit in this matter. Attached to the motion were copies of the plaintiffs Chapter 13 plan.
On August 11, 2014, checks were sent to Thomas’s previously discharged unsecured creditors in the bankruptcy proceeding, paying them in full. The checks were drawn on the firm account of his attorney in the present matter.
On August 18, 2014, Thomas filed a motion for partial summary judgment, asserting that the cause of action in this matter arose after the bankruptcy petition was filed and after the confirmation in which Thomas was vested with all property belonging to the estate. Therefore, he had no duty to disclose this cause of action to the bankruptcy court. Thomas contended that the affirmative defense of judicial estoppel should be denied.
In October 2014, the cross motions for summary judgment were argued and denied. Although we do not have a transcript of these proceedings, it appears that the trial court found there was a genuine issue of material fact at that time as to whether the plaintiffs bankruptcy creditors had been paid. Thomas’s affidavit, given in support of his motion for summary judgment, asserted that all bankruptcy creditors had been paid in full. It appears that the correspondence that had been sent to the creditors |4on August 11, 2014, with copies of the checks, had not been filed with the plaintiffs motion for summary judgment and the defense questioned whether the creditors had been paid.
In January 2015, Thomas filed a second motion for partial summary judgment, adopting his original motion and alleging that all the bankruptcy creditors had been paid, and therefore the defense of judicial estoppel should be denied. Attached to this motion were copies of the payment letters and checks issued to the creditors. The three original defendants reurged their motion for summary judgment to dismiss the present personal injury claim based on judicial estoppel. Peerless adopted their motion.[3]
Arguments on the cross motions for summary judgment were heard on July 27, 2015. The trial court had the benefit of the extensive briefs and reply briefs on all the intricacies of bankruptcy law, federal jurisprudence, and judicial estoppel. The *11 trial court also entertained extensive oral argument. The trial court astutely noted that the court rulings cited by the parties had gone both ways on the issue of judicial estoppel, and the facts in each case were distinguishable. The court observed this matter was a post-eonfírmation case. The proof was now in the record that the creditors had, in fact, been paid and this occurred “even before we came to court the last time.” Noting the considerable discretion given to the court on the application of judicial estoppel, the trial court exercised that discretion in ruling that the doctrine should not be applied in this case.-
UThe trial court granted the motion for partial summary judgment filed by Thomas, dismissing and striking the affirmative defense of judicial estoppel urged by the defendants. The motion for summary judgment filed by the defendants was dismissed. The judgment was certified as an appealable final judgment. Harris, Economy, Metropolitan, and Peerless appealed, arguing that the trial court erred in failing to apply judicial estoppel to completely bar Thomas’s claim in this matter. .
JUDICIAL ESTOPPEL
Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position. The purpose of the doctrine is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self-interest. Because the doctrine is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary. In re Coastal Plains, Inc., 179 F.3d 197 (5th Cir.1999); In re Superior Crewboats, Inc., 374 F.3d 330 (5th Cir.2004); Jethroe v. Omnova Sols., Inc., 412 F.3d 598 (5th Cir.2005). The doctrine is generally applied where intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. In re Coastal Plains, Inc., supra.
Most courts have identified at least two limitations on the application of the doctrine: (1) it may be applied only where the position of the party to be es-topped is clearly inconsistent with its previous one; and (2) that party | nmust have convinced the court to accept that previous position. The judicial acceptance requirement minimizes the danger of a party contradicting a court’s determination based on the party’s prior position and, thus, mitigates the corresponding threat to judicial integrity. In re Coastal Plains, Inc., supra. The judicial acceptance element ensures that judicial estoppel is only applied in situations where the integrity of the judiciary is in jeopardy. Absent judicial acceptance of the inconsistent position, application of the rule is unwarranted because no risk of inconsistent results exists. Allen v. C & H Distributors, L.L.C., 813 F.3d 566 (5th Cir.2015).
Many courts have imposed the additional requirement that the party to be estopped must have acted intentionally, not inadvertently. In re Coastal Plains, Inc., supra. The-debtor’s failure to satisfy its statutory disclosure duty is inadvertent only' when, in general, the debtor either lacks knowledge of the undisclosed claim or has no motive’to conceal it. In re Coastal Plains, Inc., supra; In re Superior Crewboats, Inc., supra. A motivation to conceal may be shown by evidence of a potential financial benefit that could result from concealment. U.S. ex rel. Long v. GSDMIdea City, L.L.C., 798 F.3d 265 (5th Cir.2015).
*12 When judicial estoppel is raised in the context of a bankruptcy case, federal law applies. See In re Coastal Plains, Inc., supra. Federal courts' review judicial estoppel determinations for abuse .of discretion even when the district court granted summary judgment on that basis. See Jethroe v. Omnova Sols., Inc., supra; In re Flugence, 738 F.3d 126 (5th Cir.2013); Love v. Tyson Foods, Inc., 677 F.3d 258 (5th Cir.2012). . In the instant bmatter, as in Gilbreath v. Averitt Exp., Inc., No. CIV.A. 09-1922, 2010 WL 4554090 (W.D.La. Nov. 3, 2010), there are no genuine issues of material fact, as the parties agree on the material facts. Accordingly, the parties seek summary, judgment based on a pure question of law. Because judicial estoppel is an equitable doctrine, courts. may apply it flexibly to achieve substantial justice. See Reed v. City of Arlington, 650 F.3d 571 (5th Cir.2011).
Discussion
The first step in applying the doctrine of judicial estoppel is to show that a party has taken a position plainly inconsistent with a prior legal position. In the context of bankruptcy, this requirement is generally met when a debtor does not disclose an asset to- the bankruptcy court, but then pursues a claim in a separate tribunal based on the. undisclosed asset. The next requirement is that the party convince the court to accept the previous position. Finally, the party to be estopped must have acted intentionally, not inadvertently. We do not find that these requirements have been met in this case.
We are not convinced that Thomas took an inconsistent position because, at the time of his bankruptcy filing and his injury by Harris, it is unclear that he had a duty to disclose the claim. In our view, the position advanced by the defendants completely ignores the fact that the procedure for dealing with post-confirmation claims in Chapter 13 bankruptcies has evolved in recent years. At the time' of Thomas’s bankruptcy and the accident at issue here, the duty to disclose assets or claims acquired post-kconfirmation was clouded by two provisions in the Bankruptcy Code, one suggesting - that post-confirmation causes of action are property of the estate, and the other hinting that such property is vested in the debtor. Under 11 U.S.C. § 1306(a)(1), property of the estate includes, in addition to the property that typically becomes property of the estate, all property of that kind that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first. Under 11 U.S.C. § 1327(b), except as otherwise provided in the plan dr the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor. Also, 11 U.S.C. § 1327(c) provides that, except as otherwise provided in the plan or in the order; confirming the plan, the property vesting in the debtor under subsection (b) of the section is free and clear of any claim or interest of any creditor provided for by the plan. Therefore, although a cause of action acquired post-confirmation and pre-closure, — dismissal, or — conversion would seem, on the one hand, to be property of the estate under § 1306(a)(1), it would also appear, on the other hand, to have vested in the debtor under § 1327(b). See In re Flugence, supra.
In this case, unlike many of the cases relied upon by the defendants, we have the benefit of the affidavit and deposition given by Thomas’s bankruptcy attorney, Keith Welch. These demonstrate that Thomas did not have a duty to disclose his unliquidated claim against the defendants during the time frame at issue here. Welch, a board-certified consumer bank *13 ruptcy specialist with more than 30 years of experience, attested that he represented 19Thomas in his Chapter 13 bankruptcy and that Thomas made all required monthly payments under the bankruptcy plan .in a timely fashion. Welch stated that Thomas’s plan required him to disclose any causes of action in existence at the time of the bankruptcy filing and at the time of the plan confirmation. Thomas’s plan provided that the property of the estate vested in him at the time of confirmation of the original plan and the amended plan. It was Welch’s opinion that disclosure of a post-filing unliquidated cause of action was not required unless, for other reasons^ the debtor was required to amend his plan of schedulés or if the post-confirmation cause of action was settled or paid. Welch said that this opinion was consistent with all or the majority of the bankruptcy bar in Shreveport at the time. ' According to Welch, he did not advise Thomas that disclosure of a post-petition claim or cause of action was required. Welch stated that, in the bankruptcy meetings with the trustee’s attorney and in the confirmation hearing by the bankruptcy judge, which included a one-hour speech by the judge, Thomas was never told he should disclose post-petition and post-confirmation claims or causes of action until he was, ready to settle the claim.
In Welch’s deposition, he explained that in a Chapter 13 . bankruptcy, the trustee temporarily controls the estate. At confirmation, the property of the estate is vested back in the debtor and the debtor controls the property. Welch was asked whether Thomas had an ongoing duty to disclose this pi’esent lawsuit. Welch reiterated his statements from his affidavit that, at the time the bankruptcy plan was confirmed and the property was revested | min Thomas, unless he amended his plan, if he did not receive any money from a claim, he did not have a duty to tell the court.-
Welch did not believe Thomas was required to inform the bankruptcy court of a post-petition claim .before.it was settled. He .said at the time of -the accident at issue here, the practice was to wait until a settlement was received and then inform the court. Welch said, “That was the-policy that we operated under and.I think that the judge operated under and that most of the attorneys operated under in Shreveport in 2010.”-
Welch explained that the mandatory model plans used by the local bankruptcy court were drafted by a committee made up of the trustee’s office, the creditor bar, the d.ebtor'bar, and the local bankruptcy judge. Welch said the judge had “heavy influence” on what the plan said. Under the plan used iri Thomas’s case, there was a duty to disclose when money from a judgment or settlement was received, or if the plan was amended for some reason. Absent those circumstances, there was no duty to disclose.
In Thomas’s bankruptcy plan, under Section C dealing with miscellaneous provisions, paragraphs eight and nine state;
(8) RESERVATION AND RETENTION OF PRE & POST-PETITION CLAIMS
Confirmation of this plan shall constitute a finding that the debtor does not waive, release or discharge but rather retains and reserves for himself and the Chapter 13 Trustee any and all pre-petition claims and any and all post-petition claims that they could or might assert against-any party or' entity arising under or otherwise related to any state or federal consumer statute or under state or .federal law including but not limited to fraud, misrepresentation, breach of contract, unfair and deceptive acts or practices, retail installment sales act violations, Truth in Lending viola *14 tions, Home Equity Protection Act violations, Real Estate Settlement Protection Act violations, Fair Debt Collection Practices Act violations, In Fair Credit Reporting Act violations, Equal Credit Opportunity Act violations, Fair Credit Billing Act violations, Consumer Leasing Act violations, Federal Garnishment Act violations, Electronic Funds Transfer Act violations, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court.
(9) VESTING OF PROPERTY OF THE ESTATE AND AT CONFIRMATION
Except as otherwise provided in this Plan, the confirmation of this plan vests all property of the estate in the debtor.
According to Welch, the model plan used now is different from that used in Thomas’s case. Welch said there were still unclear issues about the vesting of the estate, but the general rule for a plan filed today is that the better practice, if not the rule, is to advise clients to disclose any cause of action acquired after the initial filing or after the plan confirmation. However, he noted that Thomas’s plan was binding on him, not some future plan that he was not a party to.
Welch was also questioned about Thomas’s action in paying his creditors in full after being discharged in bankruptcy. He explained that although this was not very common, it did happen on a number of occasions. Thus, it certainly does not appear that anything illegal or nefarious was done in this case.
Under the fact pattern presented in this case, Thomas did not have a duty to disclose the claim against the defendants. Accordingly, he did not take a position inconsistent with a previous one and he did not convince the court to accept the previous position. In this case, the integrity of the judiciary is not in jeopardy and there is no risk of inconsistent results. There is no showing that Thomas was playing “fast and loose with the |12courts to suit the exigencies of self interest,” as strenuously maintained by the defendants.
However, even if Thomas had a duty to disclose his claim against the defendants, and if the first two requirements for application of judicial estoppel were met, the record indicates that Thomas’s failure to disclose the claim was inadvertent. Failure to disclose a claim is inadvertent if the debtor lacks knowledge of the disputed claim or has no motive to conceal it. It is undisputed that Thomas knew he had a claim against the defendants. However, the record shows that Thomas had no motive to conceal his claim.
As discussed above, the duty to disclose such claims arising post-confirmation where the bankruptcy estate vested in the debtor is ambiguous under the conflicting provisions of the bankruptcy law. This ambiguity has been addressed in the jurisprudence. In Woodard v. Taco Bueno Restaurants, Inc., No. CIV.A. 4:05-CV-804-Y, 2006 WL 3542698 (N.D.Tex. Dec. 8, 2006), a federal district court was called upon to determine whether the plaintiff was judicially estopped from asserting his discrimination claim against his former employer, which arose after his Chapter 13 bankruptcy plan was confirmed. He did not disclose the cause of action to the bankruptcy court because, under the confused state of the law regarding 11 U.S.C. § 1306 and 11 U.S.C. § 1327, he did not think he had a duty to do so. The court in Woodard cited New Hampshire v. Maine, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), and observed that the Supreme Court has stated that the factors for considering the appropriateness of ju *15 dicial estoppel do not establish inflexible prerequisites |1sor an exhaustive formula for determining its applicability. , Additional considerations may inform the doctrine’s application in specific factual contexts. The Supreme Court concluded in New Hampshire v. Maine, supra, that an exception must also be made where the law is unclear and unsettled. The court in Woodard stated:
To impose judicial estoppel against one whose duty is unclear would violate a fundamental principle in our jurisprudence: people are entitled to fair notice of what the law is before being held accountable under it. See U.S. Const, amend. V. Although our jurisprudence does not require actual knowledge of the law in order to be held accountable under it, even a just application of the notion of constructive knowledge relies on the law’s being clear and having been published to the public. Here, neither is the case. The law is not clear and because it is not clear, it has not been made known to the public.
The primary purpose of the judicial-es-toppel doctrine is to protect the integrity of the judicial process by preventing a party from abusing that process in an effort to gain an unfair advantage in litigation. It was not designed to estop the pure of heart, whose only sin is ignorance of unsettled law, and, at the same time, grant a windfall to a litigant who may very well be liable for wrongful conduct. For that reason, the Court concludes that Woodard’s failure to disclose his cause of action under this factual situation based on what-was an honest mistaken belief that he had no duty to disclose it amounts to inadvertence.
Similarly, in Gilbreath v. Averitt Exp., Inc., supra, the federal district court found that, although all the elements of judicial estoppel had been met, it is an equitable doctrine to be invoked by a court at its discretion. Recognizing the facial statutory conflict present in Chapter 13 cases creating a lack of clarity as to whether a debtor was required to report a post-confirmation claim, the federal district court found that the debtor’s lack of bad faith weighed in her favor, as a matter of equity. The court declined to estop Gilbreath from pursuing her personal injury claim. See | uand compare Richards v. Wal-Mart Stores, Inc., No. CIV.A. 12-0774, 2012 WL 5997165 (W.D.La. Nov. 30, 2012); Cargo v. Kansas City S. Ry. Co., 408 B.R. 631 (W.D.La.2009).
The defendants rely heavily upon U.S. ex rel. Long v. GSDMIdea City, L.L.C., supra, which was rendered in 2015, after the motions for summary judgment were filed herein. The defendants argue that judicial estoppel 'should be construed in such a way as to deter dishonest debtors whose failure to fully and honestly disclose all of their assets undermines the integrity of the bankruptcy system. According to the defendants, Long stands for the proposition that the fact that the creditors will not be harmed is not relevant.
In Long, the plaintiff filed for Chapter 13 bankruptcy in 2008, and his plan was confirmed in January 2009. The plan specified that, upon confirmation, the property of the estate did not vest in the debtor, but remained property of the estate subject to an automatic stay. The plaintiff filed a False Claims Act suit against his employer in 2011, after $4,504.91 in unsecured claims were discharged in bankruptcy without payment. Also, the plaintiff was not required to pay interest on his debt and he was given five years to repay the principal of his debts. The Fifth Circuit found that the plaintiffs failure to disclose his claim was not’ inadvertent because he had a financial motive *16 to conceal the claim. The-court observed that, had the claim been revealed, the creditors or the bankruptcy court might have sought to modify the bankruptcy plan. The inconsistencies between 11 U.S.O.. § 1306 and 11 U.S.C. § 1327 were raised, but the Fifth Circuit noted |7Kthat, when the bankruptcy plan specifies that the property, of the estate does not vest in the debtor, but remains the property of the estate, the apparent inconsistency between the provisions is of no consequence.
The facts in the present matter differ from those in Long. Here, Thomas’s plan specified that the estate did vest in the debtor at confirmation. It did not remain in the bankruptcy. estate. Also, in this case, Thomas paid all his creditors in full, including, the unsecured portions of his debts that were discharged in bankruptcy. Unlike the creditors in Long, the creditors in this matter were made completely whole. Thomas did not have the financial motive to conceal his claim that existed in Long.
The defendants also cite numerous cases, including In re Flugence, supra; Allen v. C & H Distributors, L.L.C., supra; Love v. Tyson Foods, Inc., supra; and Henry v. Kansas City S. Ry. Co., No. CIV.A. 10-0469, 2010 WL 3613796 (W.D.La. Sept. 8, 2010), to support their claim that Thomas had a continuing duty to disclose post-petition causes of action to the bankruptcy court. We find those cases to be distinguishable.
The Fifth Circuit in Flugence recognized the possible conflict between 11 U.S.C. § 1306 and 11 U.S.C. § 1327, and observed that it may be uncertain whether a debtor must disclose assets post-confirmation. The Fifth Circuit observed that the latter provision vests the property in the debtor unless otherwise specified by the confirmation plan. The plan in Flugence explicitly stated that the estate’s assets would not revest in the debtor until discharge. The court in Flugence also found that the debt- or had |1fia motive to conceal her claim because, if disclosed, it would become available to her debtors.
By contrast in the present case, Thomas’s bankruptcy plan specified that the property of the estate revested in him at confirmation. Again, because he fully paid the claims of his creditors, there was no motive to conceal the present claim to prevent it from being available to creditors.
In Allen v. C & H Distributors, L.L.C., supra, the plaintiffs filed for a Chapter 13 bankruptcy in 2009. A few months later, Mrs. Allen was seriously and permanently injured at work by a defective stool. The Allens filed a products liability claim in 2010, but never disclosed the claim to the bankruptcy court. The tort claim was removed to the federal court under diversity jurisdiction. The facts indicate that the Allens’ bankruptcy plan was amended three times after the date of the accident, but the products liability claim was never disclosed. Further, in interrogatories dealing with the products liability claim, the Allens denied ever having filed bankruptcy. The bankruptcy was discharged in 2014. The Allens argued that judicial estoppel should not apply because they did not know they had a duty to disclose the claim.
■ The Fifth Circuit found that it was irrelevant .whether the Allens were unaware that bankruptcy law required disclosure of the claim. According to the court, the Allens had. a motive to conceal the claim because doing so would allow them to reap a windfall if they had been able to recover on the claim without disclosing it to their creditors.
| i7The facts of the present case differ from those in Allen. Here, Thomas never *17 denied in interrogatories that he had filed for bankruptcy. In Allen, the plaintiffs’ bankruptcy plan was amended three times, but they never disclosed Mrs. Allen’s work injury. The Allens did not successfully complete their plan and did not receive a discharge in bankruptcy.
In Love v. Tyson Foods, Inc., supra, the plaintiff was fired from his job in July 2007. He claimed his termination was the result of racial discrimination and filed a charge with the Equal Employment Opportunity Commission (“EEOC”) on May 30, 2008. He filed suit on the claim in March 2009. Love filed for Chapter 13 bankruptcy on'May 1, 2008, and failed to disclose his potential EEOC claim. The Fifth Circuit applied judicial estoppel to bar that claim. Unlike the facts of the present matter, Love knew of the existence of his claim when he filed for bankruptcy and he had a motive to conceal the elaim from his creditors.
In Henry v. Kansas City S. Ry. Co., supra, the plaintiff filed for Chapter 13 bankruptcy in March 2009, and amended his schedule of assets in June 2009. His bankruptcy plan was confirmed in June 2009. He was injured at work in July 2009, and filed suit in February 2010. Judicial estoppel was applied to bar his claim. The court found his failure to disclose his injury claim was not inadvertent, emphasizing that he was aware of the claim during the pendency of the bankruptcy. The facts in Henry showed that the plaintiff had a motive to conceal assets from creditors. That factor is absent in the present matter.
|1sThe defendants also point to Howard v. Am. Healthways Servs., LLC, No. SA-13-CV-1164-XR, 2014 WL 2168401 (W.D.Tex. May 22, 2014), to support their argument that judicial estoppel should apply here. The plaintiff in Howard filed for Chapter 11 bankruptcy in August 2010, and filed EEOC complaints in July and November 2012. She did not disclose these potential claims- to the bankruptcy court and was discharged in bankruptcy in April 2013. She filed suit on her EEOC claims in July 2013, The court applied judicial estoppel to bar her claims.. Howard is inapposite to the present matter because it concerns .a Chapter 11 bankruptcy and the court found that the plaintiff had a motive to conceal her EEOC claims from the bankruptcy court.
The present case is more analogous to In re Kemp, No. 03-52422, 2011 WL 3664497 (Bankr.W.D.La. Aug. 19, 2011), in which the plaintiffs filed for Chapter 13 bankruptcy. One of the plaintiffs was injured in an automobile accident after the bankruptcy'plan was confirmed. The personal injury claim was later disclosed in response to a motion by the bankruptcy trustee to dismiss the bankruptcy for an unrelated reason. The debtors and the trustee agreed to withdraw the motion to dismiss if the plaintiffs obtained an 'advance on- the personal injury claim and paid all remaining creditors. The tortfea-sors'in the personal injury matter alleged that the claims were barred by judicial estoppel because they were not fully dis-closéd in the bankruptcy case. The court observed:
In sum, the plan was completed and the case fully administered with all allowed claims paid. Given the payment of all allowed claims, the determination of whether or not Debtors’ personal injury claims are barred by judicial estoppel would have nonimpact on distributions to creditors pursuant to the Bankruptcy Code.
The only Louisiana Supreme Court case to discuss judicial estoppel in the context of a bankruptcy proceeding is Miller v. Conagra, Inc., 2008-0021 (La.9/8/08), 991 So.2d 445. In Miller, the plaintiff had a *18 contract with ConAgra to raise -chickens. The term of the contract was 10 years. ConAgra terminated the contract after approximately six months. As a result, Miller filed for a Chapter 7 bankruptcy. After he received a .discharge from the bankruptcy, Miller sued ConAgra for breach of contract and unfair trade practices. ConAgra filed a motion to dismiss, claiming that Miller should be judicially estopped because he failed to disclose the claim to the bankruptcy court as a potential asset. The motion was denied and the claim proceeded to trial. Miller received a judgment of more than $2 million against the defendant. The defendant appealed. The bankruptcy trustee reopened the bankruptcy proceeding and enrolled as a party in the suit. On appeal, the defendant argued the trial court erred in rejecting the application of judicial estoppel. The Louisiana Supreme Court rejected that claim, noting that the United States Supreme Court in New Hampshire v. Maine, supra, cautioned against reducing judicial estoppel to a general formulation or principle and recognized that specific factual contexts may give rise to additional considerations. The Supreme Court, in New Hampshire, ultimately looked to equity to resolve its judicial estoppel question. The Miller court found that, because the bankruptcy proceeding had been reopened,and Miller’s creditors would be able to receive a portion of the judgment, those creditors would be harmed if Miller’s claim was [ ^barred. The Louisiana Supreme Court also found that, under the circumstances of that case, protection of the judicial process was not necessary.
In this case, the facts do not support application of judicial estoppel. Under the confused state of the law during the time period relevant to this case, Thomas did not have a duty to disclose his personal injury claim which arose post-confirmation and after the bankruptcy estate revested in him. Even if he did havé such a duty, his failure was inadvertent because he fully paid all his creditors and had no motive to conceal his claim. Under the facts presented here, the integrity of the judicial process is not implicated. Judicial estoppel is applied against the backdrop of the bankruptcy system and the ends it seeks to achieve. These ends are to bring about an equitable distribution of the bankrupt’s estate among creditors holding just demands, and to grant a fresh start to the honest but unfortunate debtor. Therefore, judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor’s estate. See Reed v. City of Arlington, supra; U.S. ex rel. Long v. GSDMIdea City, L.L.C., supra.
Thomas’s debtors were not simply paid the reduced amounts ordered by the bankruptcy court. All his debtors have been paid in full. Thomas is not the type of dishonest debtor who is attempting to reap a windfall by concealing his personal injury claim from the bankruptcy court and his 12T creditors, undermining the integrity of the bankruptcy system. If judicial estop-pel were applied here, the only parties to “reap a windfall” would be the defendants, who have already admitted liability for seriously harming Thomas. Bearing in mind that judicial estoppel is an equitable principle, equity demands that the doctrine not be applied here. To apply judicial estop-pel would allow a guilty tortfeasor to escape liability based upon a hypertechnical application of federal bankruptcy law, hardly an equitable, fair, or just result. The defendants must be held accountable for the damage they have admittedly caused.
*19 We reiterate that judicial estoppel is an equitable doctrine invoked by a court at its discretion. New Hampshire v. Maine, supra; Gilbreath v. Averitt Exp., Inc., supra. The trial court here exercised its discretion in ruling that judicial estoppel was not appropriate in this matter. We agree and find no abuse of discretion by the lower court under all the facts and circumstance presented in this case.
CONCLUSION
For the reasons stated above, we affirm the trial court ruling granting summary judgment in favor of the plaintiff, Willie Lee Thomas, and denying summary judgment to the defendants, Wanda Jean Harris, Economy Premier Assurance Company, Metropolitan Property and Casualty Insurance Company, and Peerless Insurance Company, based upon the affirmative defense of judicial estoppel. All costs in this court are assessed to the defendants.
AFFIRMED.

. America First Insurance Company, which provided umbrella coverage for Farmers Seafood, was also added as á defendant, but was later dismissed without prejudice by Thomas.

. We note that this matter has been set for trial on at least five occasions. The defendants' motion for summary judgment was filed shortly before the second trial setting. It has now been more than four years since Thomas was injured and it does not appear that he has yet received any recompense, even though Harris admitted her liability in the fall of 2012.

. Hereinafter, "the defendants” refers to all four defendants.