BROWN, C.J.
On November 5, 2014, plaintiff, Milton Tates, was involved in a car accident that forms the basis of this lawsuit. Earlier, in January 2014, plaintiffs, Milton and Brigida Tates, filed a petition for Chapter 13 bankruptcy with the United States Bankruptcy Court for the Western District of Louisiana. Plaintiffs entered into a plan for repayment, which was confirmed by the bankruptcy court in May 2014. Thereafter, the automobile accident occurred, and plaintiffs filed this personal injury lawsuit in state court. Plaintiffs failed to disclose their personal injury claim to the bankruptcy court. In April 2016, defendants in the tort lawsuit filed a motion for summary judgment based on the affirmative defense of judicial estoppel. Plaintiffs quickly amended the bankruptcy plan to include the personal injury claim as an asset, and the amendment was confirmed by the bankruptcy court. The trial court denied defendants' motion for summary judgment and granted partial summary judgment in favor of plaintiffs. For the following reasons, we affirm.
FACTS
On January 31, 2014, plaintiffs, husband and wife, Milton and Brigida Tates, filed a *718 petition for Chapter 13 bankruptcy. Milton and Brigida entered into a Chapter 13 plan of repayment with the bankruptcy court on February 6-7, 2014. The plan listed all of the Tates' assets and liabilities and provided that they were to begin making payments as required by the plan. The Tates amended the Chapter 13 plan on April 23, 2014, and the plan was confirmed by the bankruptcy court on May 29, 2014.
Plaintiffs alleged that on November 5, 2014, Milton was driving his truck in Shreveport, Louisiana, and defendant, Shelby Holland, drove his truck into Milton's path in an attempt to make a left-hand turn. Milton struck Holland's truck, which caused injuries to Milton and damage to his truck.
Milton and Brigida filed a petition for damages in the First Judicial District Court in Shreveport, Louisiana, on October 28, 2015, alleging negligence on the part of Holland. The Tates also named as defendants: (1) Integrated Production Services, Inc. ("IPS"); (2) Superior Energy Services ("SES"); and (3) Liberty Insurance Corporation ("Liberty"). Milton sought general and special damages related to his injuries and the property damage sustained to his truck. Brigida sought damages for loss of consortium.
Defendants, IPS, SES, and Liberty,[1] fax-filed exceptions, affirmative defenses and an answer on November 30, 2015, and filed the originals on December 3, 2015. On April 15, 2016, defendants fax-filed a motion for summary judgment, claiming that plaintiffs had not disclosed their negligence claim against defendants to the bankruptcy court. Defendants claimed that plaintiffs' failure to disclose the negligence claim was not inadvertent and that plaintiffs concealed the claim in order to prevent any potential award going to the bankruptcy estate. Defendants asserted that judicial estoppel barred further pursuit of the negligence claim. Defendants included as exhibits to their motion the Tates' bankruptcy petition, Chapter 13 plan for repayment, amended plan, and confirmation of the plan by the bankruptcy court.
On June 3, 2016, plaintiffs filed a motion for summary judgment and opposition to defendants' motion for summary judgment.[2] Plaintiffs opposed defendants' motion, urging that the evidence established that plaintiffs had no intent to conceal the state court proceedings from the bankruptcy court, and the facts showed that there was no danger to the integrity of the judicial process in the case of the Tates' bankruptcy because plaintiffs and undersigned counsel intended to seek bankruptcy court approval prior to disbursement of any settlement or judgment in the case.
Included as exhibits with plaintiffs' motion for summary judgment were affidavits from Milton, the Tates' attorney in the tort action, and the Tates' bankruptcy attorney. In his affidavit, Milton alleged that he had filed for bankruptcy protection, and that he had made and would continue to make all of his payments under the confirmed Chapter 13 plan. Milton stated that he had no intent to engage in deceptive conduct and had amended his Chapter 13 plan to include the tort claim as an asset. Milton attached an amended schedule to his affidavit showing that the plan had been *719 amended on April 18, 2016, to include the tort claim as an asset.
In his affidavit, the Tates' attorney in the personal injury case, Wade T. Visconte, alleged that he did not have a motive to conceal any recovery in the Tates' negligence case from the bankruptcy court. Visconte stated that his practice had been to seek approval of the bankruptcy court after a settlement or judgment was reached in a tort claim. Visconte alleged that the Tates contacted their bankruptcy attorney, Kelli Cook, in December of 2014 to inform her of their tort claim. Visconte stated that he usually follows up with the bankruptcy attorneys in these situations, but in the Tates' case he forgot to do so.
Attached to Visconte's affidavit was an application/motion to employ special purpose seeking approval from the U.S. Bankruptcy Court for the Western District of Louisiana to allow him to represent the Tates in their tort suit. Visconte attached an affidavit of disinterestedness to his application, as well as notice of a hearing to enroll as special counsel to prosecute the Tates' pending tort claim, which was set to occur on June 29, 2016. Attorney Cook's affidavit confirmed what Milton and Visconte averred in their own affidavits. All three affidavits stated that the Tates' bankruptcy case was still pending in the bankruptcy court and had not been discharged.
Plaintiffs later filed a supplemental motion in opposition, in which they asserted that Visconte had been approved as special counsel by the bankruptcy court in the Tates' bankruptcy case, the Tates' creditors had received notice of Visconte's application approval, and Visconte's approval had not been opposed by any of the Tates' creditors. Plaintiffs stated that at least one-half of any recovery from their tort suit would go to the creditors of the bankruptcy estate after attorney fees were deducted. Therefore, plaintiffs argued, any dismissal of the suit on summary judgment would prejudice the bankruptcy estate and creditors and only benefit defendants.
Attached to plaintiffs' supplemental motion was an affidavit from Visconte alleging his approval as special counsel and an order approving Visconte as special counsel signed by bankruptcy judge Jeffrey Norman. Defendants filed additional motions in opposition, reasserting that judicial estoppel was grounds for dismissing the claim. The trial court held a hearing on September 19, 2016, on the various motions. The trial judge signed an order on October 17, 2016, granting plaintiffs' motion for summary judgment and denying defendants' motion for summary judgment on the issue of estoppel.
DISCUSSION
Defendants argue that the trial court erred in denying their motion for summary judgment based on the doctrine of judicial estoppel. Defendants claim that the three steps required in order for a court to assert judicial estoppel are present in this case and should bar plaintiffs from bringing their tort claim.
Plaintiffs argue that judicial estoppel is inappropriate in this case because the law is unclear as to when bankruptcy debtors are required to disclose potential assets to the bankruptcy court after a bankruptcy plan has been confirmed by the court. Plaintiffs further assert that judicial estoppel is meant to protect the integrity of the judicial process, and in this case the judicial process has not been harmed because plaintiffs disclosed their tort suit to the bankruptcy court, and the court accepted the disclosure as an amendment to the Tates' bankruptcy plan. Plaintiffs also state that dismissing their tort suit will make it less likely that they will be able to *720 meet their financial obligations under their bankruptcy suit, potentially harming their creditors.
The common law doctrine of judicial estoppel provides that a party who has assumed one position in his pleadings may be estopped from adopting a conflicting position. The doctrine is designed to protect the integrity of the judicial process and prevent dishonest parties from "playing fast and loose with the courts to suit the exigencies of self-interest." Thomas v. Economy Premier Assurance Co. , 50,638 (La. App. 2 Cir. 5/18/16), 196 So.3d 7, 11, writs denied , 16-1169, 161177 (La. 10/28/16), 208 So.3d 377, 378.
When judicial estoppel is raised in the context of a bankruptcy case, federal law applies. Id. The U.S. Fifth Circuit Court of Appeals has recognized three requirements for applying the doctrine of judicial estoppel: (1) the party's position must be clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the nondisclosure of an asset must not have been inadvertent. Allen v. C & H Distributors, L.L.C. , 813 F.3d 566 (5th Cir. 2015). Federal courts review judicial estoppel determinations for abuse of discretion. Thomas , 196 So.3d at 12. Judicial estoppel is an equitable doctrine and, therefore, courts may employ it flexibly to realize substantial justice. Id.
The first step in applying the doctrine of judicial estoppel is to show that a party has taken a position inconsistent with a prior legal position. The U.S. Fifth Circuit has stated that Chapter 13 debtors have a continuing duty to disclose post-petition causes of action to the bankruptcy court. In re Flugence , 738 F.3d 126 (5th Cir. 2013). With bankruptcy cases, this inconsistent position requirement is generally met when a debtor does not disclose an asset to the bankruptcy court, but then pursues a claim in a separate tribunal based on the undisclosed asset. Thomas, supra.
The Tates had a continuing duty to disclose their post-petition tort claim to the bankruptcy court and failed to do so from when the claim arose on November 5, 2014, the date of the accident, until April 18, 2016, the date they amended their bankruptcy plan to include the tort suit as an asset.[3] At the time plaintiffs filed their tort suit in state court, they were representing to the bankruptcy court that they did not have claims against defendants, while representing to the state court that they did. See In re Flugence , supra ; In re Coastal Plains, Inc. , 179 F.3d 197 (5th Cir. 1999). However, plaintiffs provided proof that they amended their schedules with the bankruptcy court on April 18, 2016, to include this tort claim, eliminating *721 that inconsistent position. While that amendment came after defendants filed their motion for summary judgment asserting judicial estoppel on April 15, 2016, the inconsistent position was remedied just three days later.
The second step in applying the doctrine of judicial estoppel requires that the court accept the prior legal position. Defendants cite Flugence to show that the bankruptcy court accepted the Tates' previous position that their bankruptcy estate did not include their tort claims as an asset. However, in Flugence , the plaintiff-debtor amended her bankruptcy plan after she sustained the injuries and did not include her potential claim in that amendment. Id. at 130. In this case, the Tates filed for bankruptcy, amended the bankruptcy plan and had the plan confirmed by the bankruptcy court before Mr. Tates was involved in the car accident giving rise to this suit. Thus, there is no record of the bankruptcy court accepting an inconsistent position.
Defendants also cite Love v. Tyson Foods, Inc. , 677 F.3d 258 (5th Cir. 2012), in support of their claim that the bankruptcy court accepted the Tates' prior position. Yet, in Love , the events giving rise to the plaintiff-debtor's employment discrimination claim occurred before the plaintiff filed for bankruptcy, and he failed to include the claim in his schedule of assets. Id. at 260-61. Again, Milton's accident occurred after plaintiffs' bankruptcy case was filed, amended and confirmed. Plaintiffs provided an amended schedule filed with the bankruptcy court listing the instant suit as an asset, which the bankruptcy court accepted, as well as approving Visconte as the Tates' special counsel for this suit.
The third step in applying the doctrine of judicial estoppel requires that the non-disclosure of the asset must not have been inadvertent. The U.S. Fifth Circuit has stated that a nondisclosure is inadvertent when the party to be estopped was unaware of the facts giving rise to his claim or there was no motive for concealment. Miller v. Conagra, Inc. , 08-0021 (La. 9/8/08), 991 So.2d 445. The Fifth Circuit found in Love , 677 F.3d at 262, that Love had a motive to conceal his claim from the bankruptcy court because of the prospect that he could keep any recovery for himself instead of having it go to his creditors. "Motivation in this context is self-evident because of the potential benefit resulting from the nondisclosure." Id.
In this case, plaintiffs also could have had a motive because of the potential benefit resulting from nondisclosure. In his affidavit, however, the Tates' personal injury attorney stated that he had no motive to conceal, and his practice was to seek bankruptcy approval after a settlement or judgment was reached.
In addition to the three requirements that must be met in order for a court to invoke judicial estoppel, the U.S. Supreme Court has "caution[ed] against reducing judicial estoppel to a general formulation or principle, as well as the Court's recognition that specific factual contexts may give rise to additional considerations." Miller , 991 So.2d 445, 453, citing New Hampshire v. Maine , 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed. 2d 968 (2001). Judicial estoppel is an equitable principle invoked by the courts to protect the judicial process, not to provide a windfall to defendants who evade prosecution of what could be valid claims. Id.
In this case, protection of the judicial process is not necessary because the bankruptcy court has been informed of plaintiffs' pending tort suit. See Miller, supra. Additionally, plaintiffs' creditors could be harmed if this suit does not proceed, which would cause them to lose out on any potential *722 recovery that might be owed to them. Id. Plaintiffs' bankruptcy suit at the time of appeal was still pending. Therefore, any recovery plaintiffs make will first be reduced by their attorney's fee and 50% of what is remaining will be used to satisfy their plaintiff's creditors. Plaintiffs should not be judicially estopped from bringing their tort claim.
CONCLUSION
For the reasons set forth above, the trial court's judgment is affirmed. Costs are assessed against defendants, Integrated Production Services, Inc., Superior Energy Services, Shelby Holland, and Liberty Insurance Company.
AFFIRMED.
GARRETT, J., concurs with written reasons.

For purposes of this appeal, "defendants" refers to IPS, SES and Liberty.

Plaintiffs also filed a motion to strike defendants' motion for summary judgment for not including judicial estoppel as an affirmative defense in their answer filed December 3, 2015. Defendants sought and were granted leave by the court to file an amended and supplemental answer including judicial estoppel as an affirmative defense, thereby mooting plaintiffs' motion to strike.

Plaintiffs' bankruptcy plan states in part III(C) of MISCELLANEOUS AND OTHER PROVISIONS
(6) RESERVATION AND RETENTION OF PRE & POST-PETITION CLAIMS Confirmation of this plan shall constitute a finding that the debtor does not waive, release or discharge but rather retains and reserves for himself and the bankruptcy estate any and all pre-petition claims and any and all post-petition claims that debtor could or might assert against any party or entity arising under or otherwise related to any state or federal statute....
To the extent a claim or counter claim is known by the debtor, the debtor is aware of the duty to list such claims or counter claims in the schedules and statements filed with this bankruptcy. The debtor has been made aware of the duty to disclose any such claims or counter claims should they become known to the debtor after the original schedules and statements have been filed or they arise after such date and if they may be property of the bankruptcy estate.