Judgment rendered February 25, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,642-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

RICHARD DALE NEILL AND                    Plaintiffs-Appellees
GLORIA NEILL

versus

TOM D. CODAY AND AMANDA                   Defendants-Appellants
ROCHELLE CODAY

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 166845

Honorable Douglas M. Stinson, Judge

* * * * *

SINCLAIR LAW FIRM, LLC                    Counsel for Appellants
By:  Scott C. Sinclair

CARL HENRY FRANKLIN                       Counsel for Appellees

* * * * *

Before STONE, STEPHENS, and ROBINSON, JJ.

**STONE, J.**

This civil appeal arises from the Twenty-Sixth Judicial District Court, the Honorable Doug Stinson presiding. The parties own adjoining tracts of land and are in dispute over the location of the boundary between their respective lots. On March 2, 2022, the appellees,[1] Richard Neill ("Richard") and Gloria Neill (collectively, "the Neills"), filed a petition to fix boundary and for an injunction requiring the appellants, Tom Coday ("Tom") and Amanda Coday (collectively, "the Codays"), to remove fences that encroach on the Neills' property. The Codays reconvened demanding that the Neills be ordered to pay half the cost of removing the fence in the event the court granted the Neills' injunction. For the reasons stated herein, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

The trial court held a bench trial that began on August 10, 2022. Following is a summary of the evidence adduced that day.

In 1976, Richard Neill purchased the above tract, which is located in Benton. The Neills built a house thereon and later, in 1998, subdivided the tract into multiple lots and named it Neill Acres subdivision. The Neills used the assistance of John Bowman, Jr. ("Bowman"), a land surveyor, in subdividing the property. Below is a copy of the recorded plat map of the Neill Acres subdivision:

---

[1] They are the plaintiffs and defendants-in-reconvention.



The Neills' ownership includes lots 1, 3, and 6. The Codays own lot 2.[2] After subdividing, the Neills built cyclone fences apparently meant to separate the lots but placed them short of the property line of lot 1, i.e., several feet on the Neills' side of the property line.

The Codays bought lot 2 in 2018 and reside there. The Neills' current home is on lot 3. Lot 1 is a rental property owned by the Neills.

---

[2] Addresses: lot 1: 406 5th Street; lot 2: 410 5th Street; and lot 3: 412 5th Street.

2

The parties had a dispute which led to the Codays constructing the "privacy fence" around lot 2.[3]

In his testimony, Richard accused Tom of having moved the stakes onto the Neills' side of property lines and building fences in accord with the newly misplaced stakes. Richard admitted, however, he did not see anyone move the stakes and the trial court explicitly rejected these accusations. Richard also stated that he did not have any problem with the location of the Coday fence at the rear (i.e., north end) of lot 2.

Tom testified that he located the lot pins marking each corner of lot 2 and denied that he ever moved them. Tom built the subject fences himself, as he is in the business of building fences. He testified that, while he was building "fence 1"[4] (the north-south fence along the east side of lot 2/west side of lot 3), Richard stood five to ten feet away — on his own property — and stared at Tom the entire time, but never said anything. Tom admitted that fence 2 (running east and west at the back of lot 2/ part of the front of lot 6) is about six inches onto the Neills' property in the corner marked by "pin 2" because he had to work around the overhang of a garage adjoining that location.

*Testimony of Bowman.* The court accepted Bowman as an expert land surveyor. Bowman recounted that he assisted with the subdivision of Neill

---

[3] We note a contradiction in the record. It contains at least two exhibit lists asserting that certain exhibits were introduced at trial, one handwritten and one with the minutes of court; however, the court reporter's exhibit list (which is part of the transcript for each respective day of trial) indicates that those certain exhibits were *not* introduced at trial. The transcriptions of the proceedings themselves prove the correctness of the court reporter's exhibit list over the others.

[4] At trial there was a convention of terminology established: "fence 1" refers to the Coday fence running north and south approximating the eastern boundary of lot 2/ western boundary of lot 3; "fence 2" refers to the Coday fence running east and west, approximating the northern boundary of lot 2; fence 3 refers to the Coday fence running north and south approximating the eastern boundary of lot 1, which it shares with lot 2.

Acres in 1998 (whereas Richard said it was in 1988). In August 2021, before the subject fences were built, at the Neills' request, Bowman attempted to re-mark the corners of lot 2 as established in the 1998 subdivision. Bowman could not find pins for the northeast or southeast corners of lot 1, so he put new pins. He explained:

> The first time Mr. Neill owned all the property, so he picked where the lot lines were placed. And then we sent it to the MPC to be approved and only made one adjustment to that Lot 1 on the east line on my original survey. The MPC wanted a little more width in that lot. And then we went back in 2021 I found the original corners except for the east line of Lot 1, had to reset [pins for] those points [approximately five feet further to the east in accordance with the MPC's setback requirements].[5]

Bowman went back to the property again in June 2022 to re-mark the corners with the Neills and their attorney after the Coday fence was built. Bowman described his activities as follows:

> Q. So the work that you did in June of this year …2022, was simply to go out and — and relocated the pins that you had previously located and observe where the fence was in relationship to those pins; is that correct?
> A. Right.
> …
> So I agreed to show Carl and Mr. Neill what I could find of the corners.
> Q. Okay…your testimony is based on those observations, finding those pins and observing the fence relationship to those pins; right?
> A. Yes, sir.
> Q. And without any new survey work, no new measurements, no nothing more technical than that; is that correct?
> A. Nothing more than that…Schonstedt locator.

After both parties had rested, the trial court correctly found that, based on the evidence submitted, it was impossible for him to determine where the property lines were or where the fences were in relation to the property lines.

---

[5] Bracketed material is at R. 108.

However, the trial court did not dismiss the plaintiffs' claims for failure to meet the burden of proof. Instead, the trial court announced that it was going to appoint Charles Coyle ("Coyle"), a land surveyor, to provide the evidence needed to reach a conclusion — i.e., an "up to date" survey showing the lot lines and the locations of the fences. The court asked if either side had an objection to the appointment, and neither side objected.

Two and a half years later, on January 9, 2025, the parties returned to court and resumed the bench trial. Coyle, Richard, and Tom testified. By stipulation of the parties, Coyle was accepted as an expert in land surveying. Likewise, the parties jointly introduced Coyle's exhibits (Coyle 1, 2, 3, and 4), which he used in his presentation of his findings.

*Testimony of Coyle.* Coyle began his analysis with the recorded plat map of Neill Acres. He found that the plat map itself did not contain error on its face, i.e., the bearings and distances form a closed figure. He also explained the hierarchy of evidence of boundaries.

Coyle conducted a multi-step field survey, wherein he obtained a plat map and attempted to find the artificial monuments (i.e., pins or stakes) for the corners of the property. In conducting the survey, Coyle initially found pins as reported in attachment 2 to his report. However, the pins on the southwest, northwest, and northeast corners of lot 2 were *not* located consistently with the plat map. Coyle added pins at locations which he determined were consistent with the plat. Based on the pins Coyle set, he determined that the Codays' fences encroach onto the Neills' property in extending beyond the north and west boundaries of lot 2, and in fence 1 making a slight bulge into Neill territory.

5

However, in effect, Coyle also testified that the pins he found were apparently the original pins Bowman set in 1998, that there was no evidence that they had been moved, and that the Coday fence was consistent with those pins. Therefore, Coyle agreed, if the original pins had been placed correctly, the Coday fences would be on the property line, not encroaching onto the Neills' property.[6]

Tom testified that he, as a professional fence builder, would charge a customer $37 per foot to demolish and rebuild the fence. He also reaffirmed the wholesale cost figures from his earlier testimony, i.e., $6,524 for fence 1 and $4,475.96 for fence 2.

The trial court adopted Coyle's conclusions and rendered judgment accordingly:

> IT IS ORDERED, ADJUDGED AND DECREED that the Court accepts the conclusions of Charles G. Coyle, III and declares that the boundaries for Lot 2, Neill Acres, as recorded in Book 808, Page 749 of the Conveyance Records of Bossier Parish, Louisiana, *are as shown and depicted in Exhibit Coyle 4, a copy of which is attached hereto.* (Emphasis added.)
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the wood fence erected by the Codays at the north boundary of said Lot 2 (between monument #17 and #31) encroaches on the property owned by the Neills, and the Codays are hereby directed to remove that fence, at their expense, on or before January 9, 2026.
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the wood fence erected by the Codays at the east boundary of Lot 1 (between monument #38 and #32) encroaches on the property owned by the Neills, and the Codays are hereby directed to remove that fence, at their expense, on or before January 9, 2026.
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiffs and Defendants are cast with half each of the fees of the court appointed expert, Charles G. Coyle, III.

---

[6] That is, with the exception of fence 1 making a slight bulge into Neill territory.

> IT IS FURTHER ORDERED, ADJUDGED AND
> DECREED that all other claims of the plaintiffs and
> defendants are dismissed with prejudice.

However, Coyle exhibit 4 is not attached to the judgment.

The Codays now appeal, enumerating the following assignments of error: (1) the trial court erred in appointing an expert after the case had been "submitted"; (2) the trial court erred in not dismissing the Neills' actions once it found, after the first day of trial, that the Neills failed to carry their own the burden of proof; (3) the trial court erred by not finding that the subject properties are "enclosed" for purposes of La. C.C. art. 685; and (4) therefore, if the Coday fences encroach, the trial court erred in not assessing any responsibility for removing the fences to the Neills.

## LAW

**Boundary action.** Three real actions to determine ownership or possession of immovable property are the possessory action, the petitory action, and the boundary action. A boundary action is a nominate real action under the Code of Civil Procedure that is distinct from a possessory and a petitory action. *Hooper v. Hero Lands Co.*, 15-0929 (La. App. 4 Cir. 3/30/16), 216 So. 3d 965, 972, *writ denied*, 16-0971 (La. 9/16/16), 206 So. 3d 205.

"A boundary is the line of separation between contiguous lands. A boundary marker is a natural or artificial object that marks on the ground the line of separation of contiguous lands." La. C.C. art. 784. "The fixing of the boundary may involve determination of the line of separation between contiguous lands, if it is uncertain or disputed; it may also involve the placement of markers on the ground, if markers were never placed, were

wrongly placed, or are no longer to be seen." La. C.C. art. 785. "The boundary may be fixed upon the demand of an owner or of one who possesses as owner." La. C.C. art. 786. "The court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession." La. C.C. art. 792. "When both parties rely on titles only, the boundary shall be fixed according to titles. When the parties trace their titles to a common author preference shall be given to the more ancient title." La. C.C. art. 793.[7] "When visible markers have been erroneously placed by one of the contiguous owners alone, or not in accordance with a written agreement fixing the boundary, the error may be rectified by the court unless a contiguous owner has acquired ownership up to the visible bounds by thirty years possession." La. C.C. art. 796.

A boundary action is brought as an ordinary proceeding by the owner or possessor of one of two (or more) contiguous tracts of land to compel the fixing of the boundary between the adjacent tracts of land. La. C.C.P. art. 3691. In a boundary action, the court may appoint a surveyor to inspect the lands and to make plans in accordance with the prevailing standards and practices of his profession indicating the respective contentions of the parties. La. C.C.P. art. 3692. "After considering the evidence, including the testimony and exhibits of a surveyor or other expert appointed by the court or by a party, the court shall render judgment fixing the boundary between

---

[7] "When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." La. C.C. art. 794.

the contiguous lands in accordance with the ownership or possession of the parties." La. C.C.P. art. 3693. Accordingly, questions of title and ownership may be determined in an action of boundary.[8]

*Meyer v. Comegys*, 147 La. 851, 86 So. 307 (1920) also sets forth a hierarchy of principles controlling the determination of a boundary:

> [T]he legal guides for determining a question of boundary, or the location of a land line, in the order of their importance and value, are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity.
> …
> Monuments of the character mentioned are allowed to control, for the reason that in cases where the line is uncertain, but approximately in a given location, these guides are more permanent and possess less of the possibilities of error incident to courses, distances, and area; but when the basis for the rule ceases, as where, admittedly, the monument does not meet the calls of the deeds, then it cannot control, and must give way to the weaker guides. There being no courses or distances given in this case, the acreage or quantity prevails, and both parties receive thereby all that their deeds call for.

Finally, "all final judgments which affect title to immovable property shall describe the immovable property affected with particularity." La. C.C.P. art. 1919. *Alston v. Moore*, 55,296 (La. App. 2 Cir. 11/15/23), 374 So. 3d 277, 287, held that a judgment which twice used the word "approximately" in its property description nonetheless complied with La. C.C.P. art. 1919 because it also referenced and had attached as an exhibit "an assessor's map with [the subject] property outlined in yellow." This court reasoned that "the public, litigants, title examiners, officials charged with executions of judgments, and surveyors can read the property description

---

[8] If neither party proves ownership, the boundary shall be fixed according to limits established by possession. La. C.C. art. 792; *Hooper v. Hero Lands Co., supra.*

9

provided in the judgment and review the attached assessor's map and accurately deal with the immovable property."

**Review; related principles.** "[T]he location of a boundary line is a question of fact, and the determination of its location by the trial court should not be reversed absent manifest error." *Marcello v. Jo-Blanche Corp.*, 20-1113 (La. App. 1 Cir. 6/4/21), 330 So. 3d 632, 639, *writ denied,* 21-01666 (La. 1/19/22), 331 So. 3d 330.

La. C.E. art. 103 states:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and when the ruling is one admitting evidence, a timely objection…appears of record, stating the specific ground of objection

A party is judicially estopped from repudiating a previous position he has clearly taken before the court if the court has already accepted that previous position. *Thomas v. Econ. Premier Assur. Co.*, 50,638 (La. App. 2 Cir. 5/18/16), 196 So. 3d 7, 11, *writ denied*, 16-1169 (La. 10/28/16), 208 So. 3d 377, and *writ denied*, 16-1177 (La. 10/28/16), 208 So. 3d 378; *Godfrey v. GoAuto Ins. Co.*, 55,824 (La. App. 2 Cir. 8/28/24), 400 So. 3d 147, 155, *writ denied,* 24-01162 (La. 2/19/25), 400 So. 3d 934.

**Cost-sharing regarding common fences**

La. C.C. art. 685 mandates cost-sharing between neighbors in regard to common fences, to the following extent:

> A fence on a boundary is presumed to be common unless there is proof to the contrary.
> When adjoining lands are enclosed, a landowner may compel his neighbors to contribute to the expense of making and repairing common fences by which the respective lands are separated.

When adjoining lands are not enclosed, a landowner may compel his neighbors to contribute to the expense of making and repairing common fences only as prescribed by local ordinances.

For purposes of La. C.C. arts. 673 through 688, "enclosed" means physically enclosed by a wall, fence, ditch, or by vegetation (e.g., a hedge). The owner of an unenclosed estate cannot be forced to contribute to the expense of a common wall, except by local ordinance. *Bouchereau v. Guilne*, 116 La. 534, 40 So. 863 (La. 1906).

La. C.C. art. 685 is the basis for the Codays' reconventional demand for one-half the cost of removing the fence, the denial of which they assign as error.

## ANALYSIS

### Assignments 1 and 2

The Codays argue that the trial court erred in appointing a land surveyor after both parties rested and after finding that the Neills had failed to carry their burden of proof. From that premise, the Codays conclude that the trial court was obliged to dismiss the Neills' action at that time.

La. C.C.P. art. 3692 authorizes the court in a boundary action to "appoint a [professional] surveyor to inspect the lands and to make plans…indicating the respective contentions of the parties." This article states no restrictions on the timing of the appointment — nor any other limitations. The Codays' attorney consented to the appointment of Coyle and his admission as an expert and the introduction of Coyle's exhibits into evidence. Therefore, the Codays are judicially estopped from repudiating any of these positions. *Thomas*, *supra*; *Godfrey*, *supra*. Additionally, an

11

appellate court cannot find that a ruling admitting evidence was erroneous unless the party asserting error made a timely objection and stated the specific ground thereof. La. C.E. art. 103(A)(1). These assignments are without merit.

**Assignments 3 and 4**

The Codays alternatively argue that, if the trial court was correct in determining the boundary, it erred in not requiring the Neills to pay for half the cost of removing the fence pursuant to La. C.C. art. 685.

The Neills intended that lot 2 be separated from lot 1 and 3 by their cyclone fences (which significantly predate the Coday fences). Therefore, lots 1 and 3 were, at least at the time Coday built the encroaching fences, enclosed adjoining lands within the meaning of the second paragraph of La. C.C. art. 685: "When adjoining lands are enclosed, a landowner may compel his neighbors to contribute to the expense of making and repairing common fences by which the respective lands are separated."

The Codays intended that their fence be placed on the boundary between lots 1 and 2. Additionally, considering the testimony of Bowman and Coyle, the Codays *reasonably believed* that they had erected their fence on the common boundary. Both the Neills and the Codays attempted to enclose their respective lots by erecting fences, but both were mistaken as to the location of the boundary. The Coday fences, when moved to the proper boundary in accordance with the trial court's judgment, will be common fences pursuant to the second paragraph of La. C.C. art. 685. The expenses of moving and resetting the Coday fences separating lot 2 from lot 1 and lot

12

3 are all subject to that provision — i.e., the expense of "making" a common fence.

Tom's testimony provides a retail price-per-foot for moving the fence; however, the Codays' recovery, if any, must be limited to wholesale cost. The number of feet of fence to be moved was necessarily indeterminable until the trial court rendered its judgment. It remains indeterminable now because the judgment provides no basis for making that measurement, as the trial court implicitly found La. C.C. art. 685 inapplicable. Moreover, the judgment neither includes a property description nor *actually* attaches Coyle exhibit 4 and thus is noncompliant with La. C.C.P. arts. 1918 and 1919.

### CONCLUSION

The provision of the trial court's judgment fixing the boundary and ordering removal of the fence is **AFFIRMED but must be AMENDED on REMAND for the inclusion of a legal description in compliance with La. C.C.P. art. 1919 and 1951 and the attachment of Coyle exhibit 4.** The provision of the trial court's judgment dismissing the Codays' reconventional demand is **REVERSED**. The trial court is instructed to allow the Codays the opportunity to prove the expenses of moving and resetting the fences separating lot 2 from lots 1 and 3 and to render judgment accordingly. The costs of this appeal are taxed equally to the parties.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**